Patsy Carolyn POE, Plaintiff–Appellee,

v.

Donnie HAYDON, et al., Defendants–Appellants.

No. 87–5377.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1988.

Decided July 28, 1988.

Edwin S. Hopson, argued, Rhonda E. Curry, Wyatt, Tarrant and Combs, Louisville, Ky., Monte D. Gross, Office of Legal and Legislative Service, Frankfort, Ky., for defendants-appellants.

William C. Jacobs, argued, Lexington, Ky., for plaintiff-appellee.

---

1. Henderson is not a party to this appeal.

Before LIVELY, JONES and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

In this civil rights suit under 42 U.S.C. § 1983, various Kentucky state officials appeal the district court's order denying their motion for summary judgment based on qualified immunity. Because the district court did not properly address the issue of qualified immunity, we vacate the denial of summary judgment and remand for further proceedings.

### I

We begin with a brief overview of the facts. Patsy C. Poe was employed as a janitor by the Finance and Administration Cabinet of the Commonwealth of Kentucky. In July 1984, she began working on the night shift at the Capitol Building under the supervision of J.L. Henderson, the night foreman.[1]

In December 1984, Poe asked her superior, appellant Donnie Haydon, Building Superintendent of the Capitol, for a day shift position in the Capitol. Haydon denied the request because there were no openings on the day shift, and the Governor required the bulk of the cleaning to take place on the night shift. Haydon asked Poe whether anyone was giving her a problem of any kind, and she responded that someone was bothering her on the night shift. Poe refused to give his name, however, and indicated she would work out the problem herself. Haydon offered his assistance in the event she could not handle the problem.

On December 10, 1984, Poe wrote a letter to Haydon's supervisor, appellant Robert Smither, Branch Manager of the Division of Physical Plant, accusing Henderson of physical and sexual harassment. Copies of the letter were sent to many of the appellants, including Smither's superior, appellant John Spicer, Director of Physical Plant. In her letter, Poe detailed incidents of harassment and requested the situation be changed. She indicated that she did not want to be transferred out of the Capitol,

but simply wanted "to be left alone so I can do my job without being harassed by anyone."

Before Poe's next work shift, Spicer conducted a meeting with Henderson, Haydon and Smither to determine the facts. Henderson denied the allegations, but he was warned that sexual harassment would not be tolerated. After learning of Poe's request for a day shift position, Spicer instructed Smither to offer her the day shift in the New Capitol Annex Building (Capitol Annex), where there was an opening. Alternatively, Poe should be assigned two janitors to accompany her while she worked to prevent her from being alone at any given time.

That same day, Smither and Haydon met with Poe and her husband. Poe again asked to be moved to the day shift in the Capitol, but she was again advised there were no openings. After the meeting, she remained in her present position and was assigned to work with two other janitors to protect her from future harassment. Poe admitted that these two janitors were her friends and she felt safe with them. Nevertheless, she indicated the new arrangement was unworkable. As Poe explained in her deposition testimony, "[W]hen we go in to clean an office, we all had to go together and three people in one small office, there is no way it can be done ... [b]ecause you are running over top of each other. If one had to go out to get supplies, we had to quit working and come out and stand in the hallway until the other one come back."

Appellant Ventra Hammond, Director of the Office of Equal Employment Opportunity, initiated her own investigation at the request of Gordon Duke, Secretary of the Finance and Administration Cabinet. Hammond met with Poe and Henderson separately. Based on these interviews, and Spicer's letter which described Poe's meeting with Smither and Haydon, Hammond prepared a December 20, 1984, memorandum to Duke detailing her findings. She concluded that it was "one person's word against the other's," but a further meeting

should be held to discuss Poe's allegation of "possible management favoritism."

In addition to her interviews, Hammond asked Spicer to investigate Poe's allegations further. He, in turn, asked Haydon to obtain statements from Poe's witnesses, including fellow janitors Douglas Eversole and Elizabeth Perkins, and security guard Bessie Tracy. These witnesses confirmed Poe's allegations in various respects. Hammond received these statements after preparing her December 20 memorandum, but she did not believe they warranted revising the document.

According to Poe, Henderson did not cause any problems following the December 10 meeting. However, Poe informed Haydon by letter dated December 20 that she would be taking a leave of absence, "[d]ue to the sexual harassment, nervous condition and pressure of the matter concerning J.L. Henderson."

Appellant James Stewart, Director, Office of Management Services, first became aware of Poe's allegations when Spicer contacted him about Poe's leave of absence. He reviewed Hammond's files and informed Poe by letter dated February 20, 1985, that insufficient grounds existed for any disciplinary action against Henderson. After reiterating that a day shift position in the Capitol was unavailable, Stewart offered Poe several options: 1) return to work on the night shift in the Capitol; 2) accept a transfer to the Capitol Annex, which Stewart understood Poe had been offered earlier; 3) request leave without pay for medical reasons, if her health precluded her from working further; or 4) resign her position by submitting a letter of resignation.

By letter dated February 25, Poe denied that she was ever offered a job in the Capitol Annex, and believed that such a change would result in a cut in pay. Poe asked to return to her previous position on the night shift in the Capitol, but she wanted to be treated "as an equal employee" without anyone assigned to her as protection.

Stewart met with Poe, her attorney and several other employees on March 1, 1985.

Poe again requested the day shift position in the Capitol. Since the day shift was unavailable, a position in the Capitol Annex was offered to her. Refusing this offer, Poe decided instead to return to the night shift in the Capitol, which she did that same day.

On March 28, 1985, Poe filed a sex discrimination charge with the Equal Employment Opportunity Commission (EEOC) against the Finance and Administration Cabinet, in which she stated: "No reason has been given as to why I am constantly being harassed by Mr. Henderson. Also, no action has been taken against him." After learning of this statement, Smither, on the recommendation of Haydon, informed Poe by letter dated May 8, 1985, that she would be reassigned to the Capitol Annex on the night shift. She was later permitted to transfer to the day shift in that building.

On May 13, 1985, appellant Tony Miller, Commissioner of the Department of Facilities and Management, became involved when Poe and her husband came to his office complaining about Henderson's past harassment. Poe argued that it was unfair to move her to the Capitol Annex because of the EEOC charge. She brought with her EEOC affidavits containing witnesses' sworn statements regarding Henderson's alleged harassment. Although Miller thought the problem had been resolved earlier, he decided to contact appellant Lowell Clark, Stewart's successor as Director, Office of Management Services. At Miller's request, Clark interviewed three of Poe's witnesses (Perkins, Miller and Eversole) to verify their affidavits.

On May 17, 1985, Clark informed Miller of his conclusions. Clark concluded that there was still no proof of Poe's allegations. He also saw no reason to question Hammond's earlier investigation. When Clark learned that Poe had written a letter to the Attorney General about Henderson on May 10, 1985, which he interpreted as "stating that a problem is continuing to exist," he consulted with counsel for the Finance and Administration Cabinet. Counsel advised Clark that it was best to keep Poe and Henderson separated while the EEOC charge was being investigated. Clark thus determined that no change in Poe's assignment should be made. Upon receiving Clark's letter, Miller's office wrote to Poe on May 17 informing her that "it would be best if you remained in your present work assignment until the federal EEOC complaint is resolved."

On May 31, 1985, Poe filed a charge of retaliation with the EEOC, alleging her transfer to the Capitol Annex was in retaliation for her previous sex discrimination charge against the Finance and Administration Cabinet. She later abandoned her Title VII charges to pursue claims under 42 U.S.C. § 1983.

On December 3, 1985, Poe filed the instant action against Henderson and the appellants, alleging violations of the equal protection clause and the due process clause of the fourteenth amendment. In her complaint, she argued principally that the appellants were aware of the hostile and abusive work environment caused by Henderson's sexual harassment, but failed to take immediate action to correct the situation, including an adequate investigation of the matter. The appellants thus "acquiesced in, condoned and ratified the conduct of Henderson in creating Poe's employment-related, sexually harrassing [sic] environment." She also alleged that appellants reassigned her to the Capitol Annex in retaliation for her filing a charge of sex discrimination with the EEOC. Poe sought compensatory and punitive damages against each appellant, and injunctive relief, which included restoration of sick leave and vacation time, and reinstatement to her previous position in the Capitol.

The parties initiated discovery and Poe deposed the appellants. The appellants then moved for summary judgment on the merits and on the basis of qualified immunity. The district court denied the motion in a brief order. On March 12, 1987, the court denied the appellants' motion to reconsider, ruling that the appellants "may have violated the plaintiff's clearly established rights and hence are not qualifiedly

immune." This interlocutory appeal followed.

## II

■ Government officials performing discretionary functions are afforded qualified immunity, shielding them from civil damages, as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2735, 73 L.Ed.2d 396 (1982). Thus, whether an official "may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, — U.S. —, —, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (citations omitted).

Qualified immunity accommodates two important competing interests. On the one hand, an action for damages may be "the only realistic avenue for vindication of constitutional guarantees" where officials violate the public trust. *Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736. Yet, the "threat of liability can create perverse incentives that operate to *inhibit* officials in the proper performance of their duties." *Forrester v. White*, — U.S. —, —, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988) (emphasis in original).

> When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct. In this way, exposing government officials to the same legal hazards faced by other citizens may detract from the rule of law instead of contributing to it.

*Id.* at —, 108 S.Ct. at 542. *See also Anderson*, — U.S. at —, 107 S.Ct. at 3038 ("[P]ermitting damage suits against government officials can entail substantial social costs, including the risk that fear of

personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."); *Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736 ("These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office."). Thus, government officials must be given some assurance that they can perform their duties without fear of monetary liability or the diversions inherent in litigation. The doctrine of qualified immunity seeks to achieve this salutary goal. The doctrine reflects the belief "that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated." *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984).

In *Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court elaborated on the level of generality at which legal rights are "clearly established." The Court pointed out that it would be improper to look at the legal right in the abstract in determining whether the law was clearly established at the time of the defendant's alleged violation.

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Id.* at —, 107 S.Ct. at 3039 (citations omitted). The relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant

took his challenged actions. *See id.* at —, 107 S.Ct. at 3039–40.

In determining whether the law was clearly established, we look to "federal constitutional, statutory or case law existing at the time." *Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.1987). When the focus is on decisional law, we examine initially, and most importantly, the decisions of the Supreme Court and the courts of this circuit. *Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir.1988); *Davis v. Holly,* 835 F.2d 1175, 1180 (6th Cir.1987).[2] If case law from these sources is unavailable, we may also look for guidance to the cases from other circuits.

■ Resolution of qualified immunity is purely a question of law for the district court. *Dominque,* 831 F.2d at 677. Although "both parties have a great interest in ascertaining and in presenting their views concerning what the clearly established law was at [the relevant] time," the trial judge "bears the ultimate responsibility to resolve the question." *Ibid.*

### III

At the outset, we set forth the parties' respective procedural and evidentiary burdens on the qualified immunity issue. Poe contends that the burden is on the defendants to establish that they are entitled to qualified immunity; the plaintiff has no burden whatsoever of showing that the rights at issue were "clearly established" at the time of the alleged violation.[3] By contrast, appellants argue that Poe has the burden of proving that their conduct violated clearly established statutory or constitu-

tional law of which a reasonable official would have known.

In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court made clear that qualified immunity is not simply a defense to liability on the merits, but is in fact "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Id.* at 526, 105 S.Ct. at 2815. "The entitlement is an *immunity from suit* rather than a mere defense to liability." *Ibid.* (emphasis in original). Since qualified immunity "is effectively lost if a case is erroneously permitted to go to trial," the Court pointed out, the doctrine has been formulated in such a way as to allow insubstantial claims to be dismissed early in the litigation, such as by summary judgment, thereby protecting officials from the costs of trial and the burdens of litigation. *Id.* at 526–27, 105 S.Ct. at 2815–16.

■ Since qualified immunity is an affirmative defense which must be pleaded by the defendant official, *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736, a civil rights plaintiff need not anticipate the defense in the complaint. We have held, however, that a plaintiff seeking damages against a government official in his individual capacity for an act committed under color of law should "normally include in his original complaint all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987).

---

**2.** We may also look to the decisions of the highest state court in the state where the case arose. *Robinson v. Bibb,* 840 F.2d 349, 352 (6th Cir.1988).

**3.** Additionally, Poe argues that appellants have waived qualified immunity by failing to identify by name in their amended answer which defendants were asserting the defense. We disagree. The amended answer stated that "[s]ome of the Defendants, as executive officials of the State, are immune from personal liability." The amended answer provided Poe and the district court with sufficient notice of the appellants'

claim to qualified immunity. She has not cited case authority, nor offered any compelling reason, why we should conclude that "[t]he failure to plead the defense with respect to any particular Defendant has the effect of pleading the defense with respect to *none* of the Defendants, thereby waiving it as to all." This would *exalt* form over substance.

We also reject Poe's contention that appellants have waived qualified immunity by failing to seek court resolution of that issue before discovery. *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

If he does not, however, and if a qualified immunity challenge is made to the complaint, then ... the court must accord the plaintiff an opportunity to come forward with such additional facts or allegations that show not only violations of his constitutional rights, but also that these rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.

*Ibid.* (citation omitted). The plaintiff's failure to plead such facts or allegations prevents the case from moving forward, even from proceeding to discovery, "since the plaintiff has failed to allege acts that are outside the scope of the defendant's immunity." *Kennedy v. City of Cleveland,* 797 F.2d 297, 299 (6th Cir.1986) (citation and footnote omitted), *cert. denied sub nom. Hanton v. Kennedy,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987). *Accord, Anderson v. Creighton,* —— U.S. ——, —— n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987).

■ As noted, a public official may assert qualified immunity as an affirmative defense, but the point may also be put at issue before a formal defense is ever asserted. Thus, "the defendant could properly challenge the sufficiency of the complaint under F.R.C.P. 12(b)(6) on the basis that he was entitled to qualified immunity because the facts pleaded would not show that his conduct violated clearly established law of which a reasonable person should have known at the time." *Dominque,* 831 F.2d at 677. Whether qualified immunity is raised in a motion to dismiss or as an affirmative defense, the official must plead facts which, if true, would establish that he was acting within the scope of his discretionary authority when the challenged conduct occurred. *Davis v. Holly,* 835 F.2d 1175, 1178 (6th Cir.1987). *See Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737 ("Immunity generally is available only to officials performing discretionary functions.").

If the defendant's qualified immunity cannot be resolved on the pleadings, "then presumably the district court can so hold, and the matter may then either be appealed or proceed on to the discovery stage, after which it might be possible to resolve the issue by appropriate motion for summary judgment." *Dominque,* 831 F.2d at 677 (citing *Anderson,* —— U.S. at —— n. 6, 107 S.Ct. at 3042–43 n. 6). When the defendant takes an interlocutory appeal, all discovery must cease. *Kennedy,* 797 F.2d at 299. If the case proceeds to discovery, "any such discovery should be tailored specifically to the question of [the defendant's] qualified immunity." *Anderson,* —— U.S. at ——, n. 6, 107 S.Ct. at 3042 n. 6. Thereafter, the defendant may "file a motion for summary judgment so that the further harassment of going to trial may be avoided." *Kennedy,* 797 F.2d at 299.

■ When a party moves for summary judgment, the district court must determine, as before, whether the contours of the right that the government official allegedly violated was "sufficiently clear that a reasonable official would have understood that what he is doing violates that right." *Anderson,* —— U.S. at ——, 107 S.Ct. at 3039. Since this inquiry will turn on the circumstances with which the official is confronted, and often on the information that he possesses, the district court must consider all the undisputed evidence produced as a result of discovery, read in the light most favorable to the non-moving party. *Green v. Carlson,* 826 F.2d 647, 650–52 (7th Cir.1987).

If the undisputed facts show that defendant's conduct, as a matter of law, did not violate clearly established legal rights, then the district court must grant the defendant summary judgment on the basis of qualified immunity. *Id.* at 652. Thus, for example, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to the truth of the allegations that the defendant in fact committed acts that violate clearly established law. *Mitchell v. Forsyth,* 472 U.S. at 526, 105 S.Ct. at 2815.

■ On the other hand, summary judgment would not be appropriate if there is a factual dispute (*i.e.*, a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights. *Green*, 826 F.2d at 652. Summary judgment also should be denied if the undisputed facts show that the defendant's conduct did indeed violate clearly established rights. *Ibid.* In either event, the case will then proceed to trial, unless the defendant takes a successful interlocutory appeal on the issue of qualified immunity. *Kennedy*, 797 F.2d at 299–300.

■ Regardless of the stage at which the issue of qualified immunity is addressed, the district court should indicate the clearly established right at issue and the factual basis for its conclusion that a genuine issue exists as to the commission of acts violating that right. *Dominque*, 831 F.2d at 677.

## IV

In rejecting the appellants' claim to qualified immunity, the district court concluded that the appellants "may have violated the plaintiff's clearly established rights and hence are not qualifiedly immune." In its brief order, the trial court did not articulate its reasons for reaching this conclusion, although we may discern its analysis from the hearing conducted on this matter. Apparently, the district court concluded that Poe had a clearly established right under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and perhaps under the equal protection clause of the fourteenth amendment, to be free from a hostile work environment created by sexual harassment. The lower court denied summary judgment because there was a disputed issue as to whether appellants, in responding to Poe's reports of sexual harassment and to her filing of the EEOC

complaint, were motivated by an intent to discriminate.[4]

■ The district court's ruling is deficient in two fundamental respects. First, and foremost, the district court failed to address the issue of qualified immunity with reference to the undisputed facts in the record produced by discovery. Although the court had before it the appellants' deposition testimony, the hearing below reveals that the lower court did not read this evidence before ruling on the motion for summary judgment. By limiting its inquiry to the pleadings, the district court's analysis was not faithful to *Anderson*, —— U.S. at ——, 107 S.Ct. at 3039.

Second, the court neglected to state more fully the basis for its conclusions. "The minute order disposing of the issue gives us little help in our review." *Whitt v. Smith*, 832 F.2d 451, 454 (7th Cir.1987). We recognize that Rule 52(a), Fed.R.Civ.P., provides that findings of fact and conclusions of law are unnecessary when the district court grants or denies a motion for summary judgment. Because interlocutory review is available for the denial of such motions based on qualified immunity, however, we believe it is better practice for the district court to set forth with precision the basis for its decision. *Dominque*, 831 F.2d at 677. This will facilitate intelligent appellate review, and we believe it will conserve scarce judicial resources in the long run.

Although this court could conduct its own examination of the record and determine if there is a genuine dispute about any fact material to whether appellants violated any clearly established constitutional or statutory rights, we decline to do so. As we discuss *infra*, Section VI, the qualified immunity analysis in this case will turn in large measure on the appellants' motivations. This particular issue has not been properly addressed by the district court, nor has it been adequately briefed by the parties in this appeal. We suspect the same was true in the district court. In-

---

**4.** We will discuss the relevance of a defendant's intent or motive in the qualified immunity analysis in Section VI, *infra*.

stead, we remand this case for a determination as to whether, based on all the undisputed evidence before the court, a reasonable official in the position of each appellant could have believed his or her conduct to be lawful, considering the state of the law as it existed when he or she took the challenged actions.[5]

## V

In order to assist the lower court on remand, we will examine the state of the law as it existed at the time the appellants allegedly engaged in improper conduct. The starting point for our analysis is Poe's claims against the appellants, which she has summarized as follows:

> Defendants knew from Henderson's prior conduct that Henderson had created a sexually harassing working environment, but took no corrective action; that Poe suffered the final sexual assault by Henderson when such Defendants had that knowledge, but that (without regard to whether or not they had such prior knowledge) Defendants acquiesced in and condoned Henderson's conduct by taking adverse, punitive employment action against her, by changing the conditions of her employment, i.e., causing two male coworkers to accompany her at all times; that when Poe's EEOC complaint was served on Defendants, adverse employment action was, again, taken against her by transferring her to a less desirable work-place (whether this was in retaliation for filing the EEOC complaint, or as condoning Henderson's sexually harassing conduct, the transfer violated clearly established federal statutory and constitutional law).
>
> . . . .
>
> It is upon the sex-based discrimination by Appellants in tolerating Henderson's sexual harassment of Poe, by taking adverse employment action against her rather than Henderson, that her Fourteenth Amendment claims are based.

On the basis of the foregoing summary and Poe's complaint, we will endeavor to discern the precise legal rights which she contends were violated.

## A

■ Poe argues that the appellants failed to conduct an adequate investigation of her allegations of sexual harassment. Her argument assumes that, had appellants "adequately" investigated her complaint, her allegations of sexual harassment would have been conclusively proven; appellants would then have been constitutionally required to take disciplinary action against Henderson or to move Poe to the day shift in the Capitol. At oral argument, Poe retreated from this position, indicating that she was not seeking damages from the appellants for their failure to discipline or fire Henderson. We agree with the appellants that, at the time of the alleged violation, Poe did not have a clearly established constitutional or statutory right to a specific outcome following an investigation of her complaint of sexual harassment. *See Davis v. Holly*, 835 F.2d 1175, 1180 (6th Cir.1987). Poe has failed to bring to our attention any case law to support this contention, and we thus find it to be without merit.

This is not a case where supervisory officials refused to conduct any investigation at all. As soon as Poe alerted her superiors to possible sexual harassment, an investigation was initiated to determine the facts. Indeed, the record shows that no less than three separate investigations of Poe's complaint were initiated during the events in question; those of Spicer, Hammond and Clark. These investigations proved inconclusive, however, and appellants felt unable to discipline Henderson. They were also prevented from moving Poe to a day shift position in the Capitol because there were no openings, a reason totally divorced from the merits of the sexual harassment claim. Whether the results of the investigations were right or wrong is an open question, but "it is clear the [appel-

---

**5.** Each government official must be judged on the basis of his or her own conduct, intent and position in the state hierarchy.

lants] did not stand idly by once alerted to the possibility of a problem...." *Ibid.*

## B

Next, Poe claims that the appellants were aware of the offensive and hostile work environment created by Henderson's sexual harassment, but failed to take corrective action. While not clearly articulated, we understand her claim to be based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* In essence, Poe contends that at the time of the challenged conduct, Title VII protected an employee from a hostile or abusive work environment resulting from sexual harassment. This argument has considerable force.

Title VII makes it unlawful for an "employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). In *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2409, 91 L.Ed.2d 49 (1986), the Supreme Court ruled that "hostile environment" sexual harassment is a form of sex discrimination prohibited by Title VII. However, *Vinson* merely confirmed what had already been well established before December 1984 in many circuits, *Simmons v. Lyons,* 746 F.2d 265, 270 (5th Cir.1984); *Katz v. Dole,* 709 F.2d 251, 254 (4th Cir.1983); *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982); *Bundy v. Jackson,* 641 F.2d 934 (D.C.Cir. 1981); *Tomkins v. Public Service Electric & Gas Co.,* 568 F.2d 1044, 1048–49 (3d Cir.1977), as well as in the district courts of the Sixth Circuit. *See, e.g., Rabidue v. Osceola Refining Co.,* 584 F.Supp. 419, 427–33 (E.D.Mich.1984), *aff'd,* 805 F.2d 611 (6th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Coley v. Consolidated Rail Corp.,* 561 F.Supp. 645, 646 (E.D.Mich.1982) (and cases cited therein). Indeed, the EEOC as early as 1980 issued guidelines specifying that sexual harassment was a form of sex discrimination prohibited by Title VII. 29 C.F. R. § 1604.11(a). *See Vinson,* 477 U.S. at 65, 106 S.Ct. at 2405.

Further, the law was clearly established that an employer may be held liable under Title VII for "hostile environment" sexual harassment, whether the offender was a fellow employee, *Henson,* 682 F.2d at 905 & n. 9; *Bundy,* 641 F.2d at 947; *Rabidue,* 584 F.Supp. at 431 & n. 47; *Coley,* 561 F.Supp. at 650; 29 C.F.R. § 1604.11(d), or a supervisory employee (*i.e.,* the agent of the employer), *Craig v. Y & Y Snacks, Inc.,* 721 F.2d 77, 80–81 (3d Cir.1983); *Bundy,* 641 F.2d at 943, 947; *Miller v. Bank of America,* 600 F.2d 211, 213 (9th Cir.1979); 29 C.F.R. § 1604.11(c).

■ Despite the force of Poe's legal argument, her contention based on Title VII must fail. In *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the Supreme Court ruled that "[n]either federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon." *Id.* at 194 n. 12, 104 S.Ct. at 3019 n. 12. This is the case where the statute itself authorizes a cause of action for damages, *see, e.g., Harlow,* 457 U.S. at 820 n. 36, 102 S.Ct. at 2739 n. 36, or where the statute provides a basis for an action brought under 42 U.S.C. § 1983, *see, e.g., Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

In the instant case, Poe proceeded solely under 42 U.S.C. § 1983. Title VII does not provide "the basis for the cause of action sued upon," *Davis,* 468 U.S. at 194 n. 12, 104 S.Ct. at 3019 n. 12, because 1) Poe abandoned her Title VII claims to pursue her claims under § 1983; and 2) Title VII does not provide the basis for an action brought under § 1983. *Day v. Wayne County Board of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984). Thus, the mere fact that Poe's Title VII rights to be free from "hostile environment" sexual harassment were clearly established at the time of the challenged conduct is not sufficient to defeat appellants' qualified immunity. *See Gagne v. City of Galveston,* 805 F.2d 558, 560 (5th Cir.1986), *cert. denied sub nom. Gagne v. Putnal,* — U.S. ——, 107 S.Ct.

3266, 97 L.Ed.2d 764 (1987). Poe's claims then must rest on alleged violations of the Constitution.

## C

Appellants have characterized Poe's chief constitutional claim as follows: 1) whether sexual harassment is a violation of the equal protection clause of the fourteenth amendment; and, if so, 2) whether supervisory officials can be held liable for sexual harassment committed by subordinates. Appellants argue that, at the time of the challenged conduct, sexual harassment was not a violation of the equal protection clause of the fourteenth amendment and, moreover, supervisory officials could not be held liable for harassment committed by subordinates. Although we disagree with this assessment of the law, we conclude that Poe's § 1983 sexual harassment claims here must fail.

The case law before December 1984 established that sexual harassment by government employers would violate the rights protected by the equal protection clause. *Huebschen v. Department of Health and Social Services,* 716 F.2d 1167, 1172 (7th Cir.1983) ("sexual harassment ... directed solely at the plaintiff because she was a woman" violates the equal protection clause);[6] *Skadegaard v. Farrell,* 578 F.Supp. 1209, 1216–17 (D.N.J.1984); *Woerner v. Brzeczek,* 519 F.Supp. 517, 519–20 (N.D.Ill.1981). *See Scott v. City of Overland Park,* 595 F.Supp. 520, 529 (D.Kan. 1984). Two other district courts, including the United States District Court for the Eastern District of Michigan, came to this conclusion several months before Poe was reassigned to the Capitol Annex on the night shift. *Gobla v. Crestwood School District,* 609 F.Supp. 972, 978–79 (M.D.Pa. 1985); *Estate of Scott by Scott v. deLeon,* 603 F.Supp. 1328, 1332 (E.D.Mich.1985).

On the issue of § 1983 liability of supervisory personnel, *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982), established that a supervisory official's failure to supervise, control, or train the offending individual is not actionable, unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* at 874. *See also Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984).

█ Poe's sexual harassment claim fails on this latter score. Even assuming the allegations in her complaint are true, she has not averred that "any of the supervisory officials who [are] defendants in this case actively participated in or authorized any harassment" by Henderson. *Bellamy,* 729 F.2d at 421. At best, she has merely claimed that the appellants were aware of alleged harassment, but did not take appropriate action. This is insufficient to impose liability on supervisory personnel under § 1983. *Ibid.*

## D

Finally, Poe contends that the appellants' decisions to change the conditions of her employment—assigning two male coworkers to accompany her while she worked in the Capitol and then transferring her to the Capitol Annex—in response to her sexual harassment complaints constituted gender-based discrimination in violation of the equal protection clause.[7] Poe appears to

---

**6.** Appellants argue that *Huebschen* never specifically ruled that sexual harassment can be the basis of an action under the equal protection clause. While there is no explicit language to that effect, we believe the focus of the entire case is to the contrary. In *Huebschen,* the Seventh Circuit ruled that sexual harassment does not violate the equal protection clause when the offensive conduct is not aimed at the plaintiff because of his or her gender. The court held that the female defendant harassed the male plaintiff not because the plaintiff was a man, but because the plaintiff was a former lover who had jilted the defendant. The plaintiff's gender, it said, was "merely coincidental" to the defendant's action. 716 F.2d at 1172. The court's reasoning indicates that the plaintiff could nevertheless prevail if he were able to prove that the defendant harassed him because he was a man.

**7.** Poe also argues that the appellants transferred her to the Capitol Annex in retaliation for filing her sex discrimination charge with the EEOC. Although we do not believe Poe is basing this claim on section 704(a) of the Civil Rights Act of

argue that she was treated differently merely because she was a woman; that had the aggrieved party been a man, and the offending individual a woman, the appellants would have responded quite differently.

There can be little doubt that, before December 1984, a female public employee had a constitutional right to be treated on the same basis as a male employee. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), made clear that sex discrimination against a public employee is a violation of the equal protection component of the due process clause of the Fifth Amendment, as long as that discrimination cannot be shown to serve important governmental objectives and is not substantially related to achievement of those objectives. *See Goodwin v. Circuit Court of St. Louis County, Missouri,* 729 F.2d 541, 546 (8th Cir.1984) ("The right to be free of invidious discrimination on the basis of sex certainly is clearly established, and no one who does not know about it can be called 'reasonable' in contemplation of law."). This includes employment decisions relating to hiring and firing, *Davis,* 442 U.S. at 235, 99 S.Ct. at 2271, promotions, *Scott v. City of Overland Park,* 595 F.Supp. 520 (D.Kan.1984), and transfers, *Goodwin,* 729 F.2d at 546–47. Appellants do not deny that the same is true under the fourteenth amendment. *Huebschen v. Department of Health and Social Services,* 716 F.2d 1167, 1171 n. 1 (7th Cir.1983).

## VI

Having determined that Poe's claims may be based on the equal protection clause of the fourteenth amendment, our inquiry is not at an end. This is so because

an essential element of any equal protection claim is purposeful discrimination. *Personnel Administrator v. Feeney,* 442 U.S. 256, 276, 99 S.Ct. 2282, 2294, 60 L.Ed. 2d 870 (1979). Based on Poe's core claim that the appellants were animated by improper motives, the district court concluded that motive was a disputed issue which precluded summary judgment for the appellants on the basis of qualified immunity.

Although *Harlow* and its progeny eschewed inquiry into a defendant official's subjective intent, *see Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) (*Harlow* "rejected the inquiry into state of mind in favor of a wholly objective standard"); *Mitchell v. Forsyth,* 472 U.S. 511, 517, 105 S.Ct. 2806, 2810, 86 L.Ed.2d 411 (1985) (*Harlow* "purged qualified immunity doctrine of its subjective components"); *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (Under *Harlow,* "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."), it apparently did not rule out all consideration of the official's discriminatory intent or motive in cases where, as here, the existence of a violation is dependent on proof of such intent. As Judge (now Justice) Scalia wrote in *Halperin v. Kissinger,* 807 F.2d 180, 184 (D.C.Cir.1986), whether conduct does violate clearly established rights will often turn on the intent with which the conduct is performed. He said: "And it is impossible to place '[r]eliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law,' when clearly established law makes the conduct legal or illegal depend-

1964, 42 U.S.C. § 2000e–3(a), our discussion of *Davis v. Scherer, supra* at 428–429, is dispositive in any event.

Instead, we understand her central contention to be that she was constructively demoted without notice or hearing, in violation of the due process clause of the fourteenth amendment. We will not consider this claim, however, because it is inadequately developed. Since the district court will consider the issue of qualified immunity further, Poe may develop her due process claim more fully on remand.

The district court may wish to explore the monetary disparity between Poe's night shift position in the Capitol and her position in the Capitol Annex. The Seventh Circuit has "expressed a reluctance to find a transfer to the same pay level to be a violation [of the due process clause] of the Fourteenth Amendment." *Greenberg v. Kmetko,* 840 F.2d 467, 475 (7th Cir.1988) (en banc).

ing upon the intent with which it is performed." *Ibid.* (citation omitted).

The Ninth Circuit in *Gutierrez v. Municipal Court of Southeast Judicial District*, 838 F.2d 1031 (9th Cir.1988), illustrated this point well:

> For example, if a public employer terminates a black employee because he is black, that act clearly violates federal constitutional and statutory law. If, however, the employer terminates the black employee because of incompetence, then the discharge obviously does not violate the law at all. The act itself—the act of discharge—is neutral; it is the motive or intent that makes the act both actionable and violative of clearly established law.

*Id.* at 1050 (citations omitted). Thus, the objective legal reasonableness of the public employer's conduct will turn, necessarily, on whether that conduct was motivated by racial, sexual or political animus or by a legitimate concern for workplace efficiency.

The question that remains, of course, is the scope of the Supreme Court's admonition against considering the defendant official's subjective intent. As Judge Scalia asked, perhaps rhetorically, is "the expansive language of *Harlow, Forsyth,* and *Davis* ... to be taken seriously"? *Halperin,* 807 F.2d at 185. It may be significant that, since *Harlow,* the Supreme Court has not considered a case involving qualified immunity where motive or intent is a critical element of the offense. *See Gutierrez,* 838 F.2d at 1050 n. 25.[8] This may suggest that the present case is quite different from the one envisioned by *Harlow.*[9]

Although this area of the law is murky, we agree with Judge Scalia that we should view *Harlow* as prohibiting an inquiry into intent as it bears on a "defendant's knowl-

edge of the state of the law;" but not as rejecting inquiry into motive or intent "unrelated to knowledge of the law (*e.g.,* racial or political antagonism)." *Halperin,* 807 F.2d at 186. *Accord, Turner v. Dammon,* 848 F.2d 440 (4th Cir.1988) (Kaufman, J., dissenting). *See* Balcerzak, *Qualified Immunity for Government Officials: The Problem of Unconstitutional Purpose in Civil Rights Litigation,* 95 Yale L.J. 126, 127 (1985) ("It is unlikely that the Court meant for *Harlow* to prevent a plaintiff from inquiring into the reasons behind an official's conduct when the substantive law controlling the plaintiff's claim makes the official's state of mind a necessary component of the constitutional violation.").

Thus, under *Harlow,* it is still impermissible to inquire whether the defendant official actually knew that his conduct was unlawful. But, we agree with those circuits that have recognized that a government official's motive or intent in carrying out challenged conduct must be considered in the qualified immunity analysis, where unlawful motive or intent is a critical element of the substantive claim. *Gutierrez v. Municipal Court of Southeast Judicial District,* 838 F.2d 1031, 1051 (9th Cir.1988) ("where the lawfulness of a challenged act is dependent upon the actor's motive or intent, the purpose for which the act was undertaken must be analyzed and not just the act itself."); *Martin v. D.C. Metropolitan Police Department,* 812 F.2d 1425, 1433 (D.C.Cir.1987) ("when the governing precedent identifies the defendant's intent (unrelated to knowledge of the law) as an essential element of plaintiff's constitutional claim, the plaintiff must be afforded an opportunity to overcome an asserted immunity with an offer of proof of the defendant's alleged unconstitutional purpose.") (citation and footnote omitted); *Wright v. South Arkansas Regional Health Center,*

---

8. *Forrester v. White,* —— U.S. ——, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), involved a claim to absolute immunity.

9. It is interesting to point out that Justice Scalia in *Anderson v. Creighton,* —— U.S. ——, ——, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987), read *Harlow* as seeking to "minimize" inquiry into an official's subjective intent, rather than seeking

to "purge" or "reject" such an inquiry. As Judge Kaufman has noted recently, there is no indication in *Anderson* that Justice Scalia changed the views he expressed a year earlier in *Halperin. Turner v. Dammon,* 848 F.2d 440 (4th Cir.1988) (Kaufman, J., dissenting). Of course, it is an open question whether a majority of Justice Scalia's colleagues would agree with him.

*Inc.*, 800 F.2d 199 (8th Cir.1986). *See Kenyatta v. Moore*, 744 F.2d 1179, 1185 (5th Cir.1984) ("Because the [*Harlow*] Court did not ... purge substantive constitutional doctrine of all subjective issues, it did not entirely eliminate subjective inquiry from every qualified immunity analysis: some right ... might be violated by actions undertaken for an impermissible purpose but not by the same actions undertaken for permissible purposes.") (footnote omitted), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2141, 85 L.Ed.2d 498 (1985). Thus, "in deciding whether a defendant is entitled to qualified immunity in cases in which unlawful motive is a critical element, the court must consider the actor's intent in carrying out the act that is alleged to have resulted in the violation of the plaintiff's rights." *Gutierrez*, 838 F.2d at 1051.

 Our discussion of the relevance of motive or intent is especially applicable to Poe's claim of sex discrimination in violation of the equal protection clause. Poe's core claim, as we read it, is that the appellants' conduct, particularly their decisions to assign her to work with two fellow janitors and later to transfer her to the Capitol Annex, in response to her sexual harassment complaints was motivated by gender-based animus. Here, as we have shown, there is no doubt that the right to be free from sex discrimination is protected by the equal protection clause of the fourteenth amendment. But in deciding whether the appellants violated clearly established rights, there must be an inquiry sensitive to their individual motivations. Without an intent to discriminate on the basis of sex, the appellants' decisions reflected at most an attempt at a temporary resolution of an ambiguous situation.

This case has already proceeded to discovery, so we have no occasion to discuss a plaintiff's pleading responsibilities where motive or intent is an essential element of the challenged conduct. *See Gutierrez*, 838 F.2d at 1051–52; *Hobson v. Wilson*, 737 F.2d 1, 26–29 (D.C.Cir.1984), *cert. denied sub nom. Brennan's v. Hobson*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Where, as here, discovery has taken place and the defendant officials have moved for summary judgment on the basis of qualified immunity, we believe the plaintiff must present direct evidence that the officials' actions were improperly motivated in order to have any hope of defeating the motion. *Martin*, 812 F.2d at 1435. The plaintiff, "to avert dismissal short of trial, must come forward with something more than inferential or circumstantial support for [her] allegation of unconstitutional motive." *Ibid.*

Because the law concerning the interplay between qualified immunity and impermissible motive was "far from clear," *Gutierrez*, 838 F.2d at 1052; *Martin*, 812 F.2d at 1436, at the time the district court made its ruling in this case, we believe the plaintiff should be given an opportunity to amend her response, if necessary, to appellants' motion for summary judgment to make the showing mandated by the foregoing discussion. Appellants should be given an opportunity to make any adjustments to the summary judgment motion as well.

### VII

In conclusion, we set forth the district court's inquiry on remand. The district court's main task is to look to the undisputed facts in the record, viewed in a light most favorable to the non-moving party, in determining if there is a genuine issue as to whether the appellants' conduct violated clearly established constitutional rights.

On Poe's sex discrimination claim, the question is whether a reasonable official in the position of each appellant could have believed that transferring Poe to the Capitol Annex and assigning her to work with two other janitors was lawful, considering that gender-based employment decisions violate the equal protection clause (assuming those decisions do not serve important governmental objectives and are not substantially related to achievement of those objectives). If there is a genuine issue of material fact concerning an appellant's motivation for those decisions, and there is direct evidence that an appellant was motivated by Poe's gender, then summary judgment should be denied. If, on the other hand, Poe is unable to provide any direct evidence

of gender-based animus, summary judgment must be granted for the appellants. *See, e.g., Wright v. South Arkansas Regional Health Center, Inc.,* 800 F.2d 199, 204–05 (8th Cir.1986).

We emphasize that the district court should not rule against the appellants merely for reaching the "wrong" decision in their investigation of Poe's complaint, even assuming such a judgment can be reached at this stage of the litigation. Rather, the court should take into account the investigations that were initiated, and the conclusions that were reached, and then consider whether the appellants reasonably could have concluded that their subsequent actions in assigning Poe to a crew of three and transferring her to the Capitol Annex did not violate Poe's legal rights. *See Garvie v. Jackson,* 845 F.2d 647, 652 (6th Cir.1988). The analysis for Poe's retaliation claim is similar.

Accordingly, the judgment of the district court is vacated and the case remanded for proceedings consistent with this opinion.

NATHANIEL R. JONES, Circuit Judge, concurring.

Because I find the majority opinion engages in more analysis than necessary to resolve this matter, I concur in the result only.