7 F.3d 233
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George FITZPATRICK, Heza Fitzpatrick, Plaintiffs-Appellees,
v.
Lee MEYER, Brown County Sheriff, Defendants,
Todd Cribett, Jack Mackey, Brown County Board of Mental
Retardation and Developmental Disabilities,
Defendants-Appellants.
 Nos. 92-4159, 93-3033.
 United States Court of Appeals, Sixth Circuit.
 Sept. 14, 1993.
 
 Before: MILBURN, RYAN, and BATCHELDER, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 This case involves consolidated appeals from two summary judgment orders entered in plaintiffs' 42 U.S.C. §§ 1983 and 1985 action. George and Heza Fitzpatrick filed suit against the defendants for their respective roles in allegedly seizing plaintiffs' business documents without a warrant. Both defendant Sgt. Lee Meyer, a deputy sheriff, and Jack Mackey, superintendent of the Brown County Board of Mental Retardation, appeal the district court's summary judgment orders denying them qualified immunity from suit for their role in the alleged seizure of the documents.
 
 
 2
 The issue is whether the district court erred when it determined that Meyer and Mackey were not entitled to qualified immunity.
 
 
 3
 We conclude that the district court erred when it determined that Meyer and Mackey were not entitled to qualified immunity. Therefore, we shall vacate the district court's orders and remand with instructions to enter judgment in favor of defendants.
 
 I.
 
 4
 George and Heza Fitzpatrick operated three group homes for the mentally retarded in Williamsburg, Ohio. In the fall of 1990, the superintendent of the Brown County Board of Mental Retardation, John Mackey, received reports of abuse and neglect occurring at the Fitzpatrick homes, including a report that a resident had been raped at one group home. Mackey notified the State Mental Retardation and Mental Disabilities Department (MRDD), the Sheriff's Department, the Brown County Human Services Department, and Mr. Fitzpatrick about the reports. Mackey, the Human Services Department, and the Sheriff's Department decided to investigate the homes. In a telephone conversation on November 9, Mackey instructed Sgt. Meyer to tell Fitzpatrick that their business records would be "frozen."[1] Meyer did not inquire as to whether a warrant or a court order had been obtained authorizing a "freeze" of the records. Mackey also directed Todd Cribett, an MRDD investigator, to investigate the Fitzpatricks' group homes, while the Human Services Department assigned Teresa Holbrook, a Social Services worker, to the case. According to Mackey, he "probably" told Cribett that Cribett should inform the Fitzpatricks that the records were considered frozen. He claims that he did not tell Cribett to take custody of the records.
 
 
 5
 According to Mr. Fitzpatrick's deposition testimony, Mackey telephoned him on November 9, 1990, and said, " 'George, you better get to your office because the Sheriff is coming there to freeze your records.' " Sgt. Meyer testified in his deposition that he went to the one of the group homes on November 9 to investigate the rape and assault allegations. Although a warrant had not been issued, Sgt. Meyer told Fitzpatrick that he had orders to freeze their business records.[2] Meyer also told Fitzpatrick that Fitzpatrick need not lock up his business records but that the Fitzpatricks were not to have access to them. Meyer did not ask to see the records, nor did he segregate them or remove them from the premises. Meyer had no other contact with Fitzpatricks until November 20, 1990.
 
 
 6
 After Meyer left the residence, Cribett, who worked for Mackey, and Holbrook arrived at the home and demanded to see the records. Holbrook told Fitzpatrick that although the records were frozen to the Fitzpatricks, they were not frozen to Cribett or Holbrook. The two county officials reviewed the records for several hours and left the home with two boxes of the records for further investigation. Two days later, MRDD officials reviewed more records at the home and placed monitors in all of the Fitzpatrick group homes.
 
 
 7
 The Fitzpatricks made several phone calls to Mackey to determine how to get their records back. Subsequently, the Fitzpatricks received a letter from Mackey, who advised them that he had no power to freeze their records and that he had no objections to releasing the records to the Fitzpatricks. Sergeant Meyer also sent a letter to Fitzpatrick stating that he had determined that Mackey was not authorized to instruct Meyer to freeze the records, and, therefore, the records were not frozen.
 
 
 8
 The Fitzpatrick's filed suit against Meyer, Mackey, Cribett, Holbrook, and several others, pursuant to 42 U.S.C. §§ 1983 and 1985, claiming that their Fourth, Fifth, and Fourteenth Amendment rights were violated, that they were denied due process of the law, and that defendants conspired to deprive them of their constitutional rights. The complaint also included state law claims. On September 18, 1992, Sgt. Meyer filed a motion for summary judgment, arguing, inter alia, that he was entitled to qualified immunity from suit in federal court. The district court granted Meyer's motion in part and denied it in part, but determined that Meyer was not entitled to judgment on the basis of qualified immunity. Cribett and Mackey also filed a motion for summary judgment making the same arguments as Sgt. Meyer. The district court determined that Cribett was entitled to summary judgment but that Mackey was not immune from this lawsuit.
 
 II.
 
 9
 Meyer argues that the district court erred when it denied him qualified immunity. First, Meyer argues that the Fitzpatricks failed to establish that a constitutional violation occurred. Second, he argues that any right violated was not "clearly established." Finally, he argues that Meyer acted reasonably in relying on Mackey's instructions to freeze the records. The Fitzpatricks respond that the court correctly determined that the seizure violated their Fourth Amendment rights and a reasonable officer should have known that Meyer's statements violated their rights. Mackey argues that the court erred when it concluded that his "suggestion" to Meyer to freeze the documents amounted to a constitutional violation. Mackey also argues that a reasonable official would not necessarily have known that his suggestion to Meyer was a violation of the Fitzpatricks' rights. The Fitzpatricks respond that Mackey was not entitled to qualified immunity because the decision to investigate was his idea and because the investigation was conducted at his direction.
 
 
 10
 Whether a defendant is entitled to qualified immunity is a question of law for the district court. Poe v. Haydon, 853 F.2d 418, 424 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989). Because the issue of qualified immunity is a legal question, no deference is due the district court's conclusion. Ramirez v. Webb, 835 F.2d 1153, 1156 (6th Cir.1987).
 
 
 11
 "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The question whether an official is protected by qualified immunity does not turn on the subjective good faith of the defendant; rather, it turns on the "objective legal reasonableness" of his actions, assessed in light of the legal rules that were "clearly established" at the time the actions were taken. Harlow, 457 U.S. at 818-19. Because the qualified immunity inquiry "will turn on the circumstances with which the official is confronted, and often on the information that he possesses, the district court must consider all the undisputed evidence produced as a result of discovery, read in the light most favorable to the non-moving party." Haydon, 853 F.2d at 425.
 
 
 12
 To determine whether qualified immunity protects the defendants, this court must determine: 1) whether the Fitzpatricks identified a clearly established right alleged to have been violated; and 2) whether a reasonable state official in each of the defendants' positions should have known that his conduct was undertaken in violation of these rights. See Johnson v. Estate of Laccheo, 935 F.2d 109, 111 (6th Cir.1991). Thus, we first must determine whether the Supreme Court decisions on search and seizure law provide "an authoritative, 'clearly established' rule forewarning defendants ... on pain of personal liability." Daugherty v. Campbell, 935 F.2d 780, 784 (6th Cir.1991) (citation omitted), cert. denied, 112 S.Ct. 939 (1992). Particular circumstances of the given case need not have been previously held illegal for the right to be "clearly established"; but the right must, in a particularized sense, be clear enough to put a reasonable official on notice that his actions are illegal or unconstitutional. See Marsh v. Arn, 937 F.2d 1056, 1067 (6th Cir.1991).
 
 
 13
 The parties agree that if there was a violation, it would be of the Fitzpatricks' Fourth Amendment rights to be free from an unreasonable seizure.
 
 
 14
 We conclude that the district court erred when it concluded that the Fitzpatricks' Fourth Amendment rights were violated when Meyer told them to consider their business records frozen. Meyer did nothing more than convey the message to the Fitzpatricks that they should consider their records frozen. Meyer did not ask to see, did not segregate, and did not physically seize the records. The Fitzpatricks cite no authority, and we know of none, holding that conveying a message that one's business records should be "frozen" is an act that constitutes a "seizure" under the Fourth Amendment. We conclude that Meyer's message to the Fitzpatricks is not a seizure under the Fourth Amendment.[3]
 
 
 15
 Because we have concluded that Meyer did not violate the Fitzpatricks' rights when he delivered Mackey's message to the Fitzpatricks, it follows that Mackey is also entitled to qualified immunity.[4] Furthermore, we need not address whether a reasonable state official in each of the defendants' positions should have known that his conduct was undertaken in violation of the Fitzpatricks' clearly established rights. See Johnson, 935 F.2d at 111.
 
 III.
 
 16
 For these reasons we VACATE the orders denying Mackey and Meyer qualified immunity and REMAND with instructions to enter summary judgment for these defendants.
 
 
 
 [1]
 At his deposition, Mackey testified that he "suggested the records should be frozen." According to Sgt. Meyer, Mackey told him, " 'Advise Mr. Fitzpatrick that my people will be in his home tonight and his records are frozen.' "
 
 
 [2]
 According to Sgt. Meyer, he stated, " '[Mackey] advised me to tell you that his people will be in your home tonight and that your records are frozen.' " Fitzpatrick testified that Meyer told him, " 'I'm a deputy sheriff and I have orders to freeze your records.' "
 
 
 [3]
 Furthermore, even if Meyer's actions amounted to a seizure, it is not clear that the seizure was unreasonable under the Fourth Amendment given that the state already had access to the records as a result of state licensing requirements. See Donovan v. Dewey, 452 U.S. 594, 600 (1981). Thus, even if Meyer's actions constituted a Fourth Amendment violation, the violation was not so clearly established as to forewarn Meyer on pain of personal liability
 
 
 [4]
 Because we understand the district court's order as holding that the "seizure" occurred when Meyer conveyed the message, we do not address or resolve whether a seizure for which Mackey is responsible occurred later when Holbrook and Cribett searched and seized his records