9 F.3d 1548
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John HAMILTON and Jo-Bet, Inc., a Michigan Corporation d/b/a
Henry the VIII South, Plaintiffs-Appellants,
v.
Lawrence LOKUTA, individually, Defendant-Appellee.
 No. 92-2361.
 United States Court of Appeals, Sixth Circuit.
 Nov. 9, 1993.
 
 Before: KEITH, NELSON, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment in favor of the defendant, a police officer, in a civil rights action that arises out of an allegedly unreasonable search of the corporate plaintiff's premises and an allegedly unreasonable seizure of the individual plaintiff's person. We conclude as a matter of law that the search was not unreasonable, but we further conclude that disputed issues of material fact preclude summary judgment on the seizure question. We shall therefore affirm the judgment in part and reverse it in part.
 
 
 2
 * Plaintiff Jo-Bet, Inc., d/b/a Henry VIII South, operates a suburban Detroit bar at which entertainment (including "lap dancing") is provided by topless dancers. Jo-Bet is owned in part by plaintiff John Hamilton, a former Detroit police officer.
 
 
 3
 At approximately 10:30 p.m. on June 13, 1991, the bar was raided by a group of law enforcement officials led by the defendant, Detective Lieutenant Lawrence Lokuta of the Southgate, Michigan, Police Department. Lt. Lokuta had warrants for the arrest of seven dancers on charges of indecent and obscene conduct. He had no search warrant.
 
 
 4
 When the raid began Lt. Lokuta had the music turned off and the lights turned on. The patrons (who included plaintiff Hamilton) were asked not to leave. People seated at one table were permitted to depart after a member of that party protested, but an off-duty policeman who also asked to leave was denied permission to do so. The policeman, it appears, had given his gun to a female companion.
 
 
 5
 The dancers named in the warrants were identified and arrested. Lt. Lokuta then had a narcotics dog brought in to sniff the belongings of the dancers and portions of the establishment. Mr. Hamilton was not searched, but he and other patrons were allegedly detained for up to two and a half hours while the police searched the premises. It does not appear that Mr. Hamilton sought to leave, and the record indicates that he remained on the premises for a time after the departure of the officers.
 
 
 6
 Mr. Hamilton and his corporation sued Lt. Lokuta under 42 U.S.C. § 1983, alleging that the lieutenant had violated their right to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments. Cross-motions for summary judgment were filed, defendant Lokuta asserting a defense of qualified immunity, among other things. The district court ultimately granted the defendant's motion, holding that the search was reasonable, that there was no unreasonable seizure, and that the defendant was entitled to qualified immunity in any event. The plaintiffs have perfected a timely appeal. There has been no cross-appeal.
 
 II
 
 7
 To prevail on a motion for summary judgment, the moving party must "show that there is no genuine issue as to any material fact and that [the movant] is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. Summary judgment is appropriate against a party who, having been called upon to do so, fails to come forward with evidence tending to establish a disputed element of that party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). This court reviews summary judgment proceedings de novo, making all reasonable inferences in favor of the nonmoving party. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990).
 
 
 8
 As to the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether an official is entitled to such immunity, the relevant inquiry is whether the officials' actions "could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Giving the plaintiffs the benefit of all reasonable inferences, we must determine "whether an objectively 'reasonable officer could have believed [the search] to be lawful, in light of the clearly established law and the information the searching officers possessed.' " Hall v. Shipley, 932 F.2d 1147, 1151 (6th Cir.1991) (quoting Anderson, 483 U.S. at 641).
 
 
 9
 * The liquor traffic is subject to pervasive regulation in Michigan, and this is a circumstance that may entitle the state to authorize warrantless searches of establishments at which liquor is sold. See Colonnade Catering Corp. v. United States, 397 U.S. 72, 77 (1970). Owners of business establishments operating in closely regulated industries have a reduced expectation of privacy. See New York v. Burger, 482 U.S. 691, 702-703 (1987). Where the owners' privacy interests are thus weakened, and the government's regulatory interests are concomitantly heightened, warrantless inspections of commercial establishments are deemed "reasonable," within the meaning of the Constitution, if three criteria are met:
 
 
 10
 "First, there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 "Second, the warrantless inspections must be necessary to further the regulatory scheme.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 "Finally, the statute's inspection program, in terms of the certainty and the regularity of its application, must provide a constitutionally adequate substitute for a warrant." Id. at 702-703 (citations and internal quotes omitted).
 
 
 17
 The Michigan Liquor Control Act authorizes warrantless searches of liquor licensees' premises, see Mich.Comp.Laws § 436.7a(2), which suggests that the Michigan legislature considers the constitutional criteria to have been met in this context. The Michigan Court of Appeals has stated that the law "authorizes, at a minimum, the search without a warrant of any licensed premises for the purpose of discovering any violation of the Liquor Control Act or the regulations promulgated pursuant to that act." People v. Jones, 447 N.W.2d 844, 846 (Mich.Ct.App.1989). The regulations promulgated under the Act state that a licensee or its agent shall not "[a]llow the sale, possession, or consumption on the licensed premises of any controlled substances which are prohibited" under Michigan law. 1985 A.A.C.S., R. 436.1101(5). The Act and the regulations are not unconstitutional on their face, and the plaintiffs do not contend otherwise.
 
 
 18
 Plaintiff Jo-Bet argues, however, that genuine issues of material fact exist with respect to the motivation for this particular search and the manner in which it was executed. In this connection Jo-Bet stresses evidence to the effect that defendant Lokuta said "I want to put John Hamilton out of business." Lokuta denies having made this statement, but we must assume, for present purposes, that a jury would not believe the denial.
 
 
 19
 The fact that the true motivation for the warrantless search may have been to gather evidence capable of supporting convictions under the criminal laws is not enough to make the search unreasonable. Burger, 482 U.S. at 715. The presumed desire to put Mr. Hamilton out of business may or may not have been justified, but we do not believe that it could suffice to defeat Lt. Lokuta's qualified immunity defense. The test is objective, not subjective, and we think an objectively reasonable officer could well have believed that a search conducted as this one was would be lawful. Our disposition of the qualified immunity issue makes it unnecessary to rule on the reasonableness of the search in a constitutional sense. Nothing said here is intended to imply that we consider the search unreasonable; there is simply no need for us to reach that issue.
 
 
 20
 The plaintiffs suggest that it was unreasonable to detain the bar's patrons, and that this made the search unreasonable. Whether the detention of patrons was reasonable, however, is a separate issue--and Jo-Bet lacks standing to assert the Fourth Amendment of its patrons, because such rights are, of course, personal.
 
 B
 
 21
 Taking the evidence in the light most favorable to plaintiff Hamilton, we believe it would be within the province of the jury to find that Mr. Hamilton was detained against his will for a period in excess of two hours. Such a detention would constitute a seizure for Fourth Amendment purposes, see Florida v. Royer, 460 U.S. 491, 502 (1983), and no reasonable police officer could consider it constitutional. It was and is clearly established that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Id. at 500.
 
 
 22
 When Lt. Lokuta entered the bar, he had no probable cause to believe that any of the establishment's patrons would be violating the law. As noted in Ybarra v. Illinois, 444 U.S. 85 (1979), the "requirement [of probable cause to seize a person] cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to ... search the premises where the person may happen to be." Id. at 91. The statute authorizing a search of the premises gave Lt. Lokuta no authority to violate Mr. Hamilton's constitutional right not to be seized unreasonably, and Lt. Lokuta has articulated no facts justifying a suspicion that Mr. Hamilton was dangerous or was involved in criminal activity.
 
 
 23
 Lt. Lokuta cites Michigan v. Summers, 452 U.S. 692 (1981), as indicating that he could detain the bar's patrons incident to an administrative search. We are not persuaded that the rationale of Summers has any application here.
 
 
 24
 In Summers a homeowner was detained by police officers during the execution of a warrant authorizing a search of the house for narcotics. Id. at 693. The Supreme Court concluded that it was reasonable to detain the owner during a search of that kind in order to minimize the risk of harm to the officers, to prevent flight in the event incriminating evidence was found, and to facilitate orderly completion of the search. Id. at 702-703. The Court also noted that the probable cause underlying the search warrant could create a reasonable suspicion of criminal activity by the owner of the house. Id. at 703-704. The Court went on to hold "that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id. at 705 (footnote omitted).
 
 
 25
 In the case at bar, by contrast, there was no probable cause to believe that contraband would be found in the course of the administrative search. There was no apparent risk of harm to the police. There was no evidence that the presence of Mr. Hamilton was necessary to facilitate the orderly completion of the search; the policemen were unaware, indeed, of his ownership interest in the bar. There was no need to prevent the patrons generally from departing, because there was no reason to believe the search would incriminate them.
 
 
 26
 There is a real question in our minds as to whether Mr. Hamilton was in fact detained against his will, but on the record before us this is not the kind of question that a court can resolve in summary judgment proceedings. The judgment entered by the district court is REVERSED insofar as it relates to the alleged seizure and AFFIRMED insofar as it relates to the search of the premises. The case is REMANDED for further proceedings not inconsistent with this opinion.