**Arvil HALL, Plaintiff–Appellee,**

v.

**Jon SHIPLEY, Don Boles, Phillip Nall, and Sgt. Jack Mansfield, Defendants–Appellants.**

No. 89–5125.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1990.

Decided May 8, 1991.

Michael W. Ritter (argued), Joyce, Meredith & Fliteroft, Oak Ridge, Tenn., for plaintiff-appellee.

John C. Duffy (argued), Watson, Reeves & Beeler, Knoxville, Tenn., for defendants-appellants.

Before JONES and RYAN, Circuit Judges, and HILLMAN, Senior District Judge.[*]

* The Honorable Douglas W. Hillman, Senior District Judge for the Western District of Michigan, sitting by designation.

NATHANIEL R. JONES, Circuit Judge.

In this civil rights action under 42 U.S.C. § 1983, Jon Shipley, Jack Mansfield, Don Boles and Phillip Nall, police officers for the City of Oak Ridge, Tennessee, appeal the district court's denial of their motion for summary judgment on grounds of qualified immunity. Officers Nall, Boles and Mansfield also appeal the district court's denial of their motion for summary judgment on grounds that service of process on them was insufficient and outside the one-year statute of limitations. The officers bring this interlocutory appeal as of right. 28 U.S.C. § 1291. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

On January 26, 1987, Officer Jon Shipley secured a warrant to search the apartment of plaintiff-appellee Arvil Hall. Two reliable informants had supplied information to Officer Shipley that Hall was selling marijuana from his apartment. One of the informants specifically advised Shipley that the officers "would have to gain entry into the premises quickly or the dope would be gone." Thus, the officers were advised that "time might be of the essence."

During the evening of January 27, 1987, Shipley executed the warrant with the assistance of Don Boles, Phillip Nall and Jack Mansfield. When the officers arrived at Hall's residence, Hall and a female companion, Mary Lou Posey, were engaged in sexual intercourse. The officers gained entrance into Hall's apartment by forcing the front door open with a battering ram. The parties dispute whether the officers knocked and announced their identity and purpose. Officers Nall and Boles testified that they knocked loudly on Hall's door and shouted their identity. Also, Officer Mansfield testified that there were "several raps on the door." To the contrary, Hall and Posey claim that they did not hear a knock

or an announcement and that upon hearing a loud noise caused by the battering ram, Posey left the bedroom and went into the livingroom, near the apartment entrance. Posey sat silently on the couch as the officers continued to break open the door.

Although all of the officers contend that they did knock and announce their purpose and authority prior to forcing entry, the officers have given varying estimates with respect to the amount of time that elapsed between the knock and announcement and the forced entry. The officers maintain that because sounds were heard after their knock and announcement which did not appear to be footsteps coming toward the door, they believed that Hall was attempting to destroy the marijuana. Thus, they contend that exigent circumstances existed which made it necessary to enter the apartment immediately after the knock and announcement. Testimony differs as to whether the officers heard noises from inside the apartment after the knock and announcement. While Sergeant Mansfield testified that he heard noises of uncertain origin, Officers Boles and Nall did not report hearing any sounds. Officer Shipley was apparently on the sidewalk at the time the decision to use the battering ram was made and did not approach the apartment's door until after it had been broken open.

Officers Boles and Nall entered the apartment with guns drawn and ordered Posey not to move. Hall's location at this time is disputed; but it is clear that he was not clothed when the officers entered. The period of time during which Hall was made to stand in the nude is disputed. Hall and Posey allege that at one point Officer Shipley ordered Hall to wear a woman's dress.

Officer Shipley conducted a search which lasted approximately twenty to thirty minutes. The search produced two containers of marijuana seeds, empty plastic bags containing marijuana residue, two sets of scales, a "roach clip" for holding marijuana cigarettes, and a "roach pipe." Neither Hall nor Posey was arrested because the Anderson County district attorney does not prosecute cases involving only minor quantities of marijuana or contraband.

Hall instituted this action on January 26, 1988, in the United States District Court for the Eastern District of Tennessee. The complaint alleged violations of 42 U.S.C. §§ 1983 and 1985[1] stemming from two aspects of the search of Hall's apartment: 1) the officers' alleged failure to knock and announce their identity and purpose prior to forcing entry; and 2) the officers' alleged insistence that Hall remain naked during a portion of the search of his apartment. The complaint named Jon Shipley; the City of Oak Ridge, Tennessee; Timothy Braaten; and three "John Doe" officers who were employees of the Oak Ridge Police as defendants. The answer to the complaint, filed on February 24, 1988, revealed the identities of the three John Doe officers as Sergeant Jack Mansfield, Officer Don Boles and Officer Phillip Nall. On November 11, 1988, the defendants filed a motion for summary judgment contending that Shipley, Boles, Nall and Mansfield ("the officers") were entitled to qualified immunity. On December 29, 1988, defendants Boles, Nall and Mansfield filed a second motion for summary judgment arguing that because they were not named in Hall's initial complaint and did not become aware of Hall's suit until after the statute of limitations had run, service of process on them was insufficient and outside the statute of limitations.

The district court denied the defendants' summary judgment motion based on qualified immunity grounds. Because the search was "conducted at night, in a residence, by forceable entry," and because "plaintiff's version of the events is diametrically opposed to the defendants' version," the court held that the defendants' actions may have been violative of clearly established law. Shipley also argued that he should be granted summary judgment because he neither ordered nor participated in the use of the battering ram or in Hall's being made to stand naked. The district court found that by obtaining the warrant

---

1. The district court dismissed plaintiff's claim based upon 42 U.S.C. § 1985(3) because plaintiff "failed to substantiate a basis for sustaining a trial on this cause of action."

and conducting the search, Officer Shipley's conduct was causally connected to Hall's claims under § 1983. Finally, regarding the sufficiency of process and statute of limitations issues, the court held that because officers Nall, Boles and Mansfield's identities were revealed in the defendants' answer to Hall's complaint, the defendants were bound by their admission and had waived their right to complain of insufficient service of process or the running of the statute of limitations.

## II.

■ "[I]n reviewing a district court's ruling denying a summary judgment motion on grounds that a material issue of fact exists appellate review is governed by an 'abuse of discretion' standard." *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). The issue of qualified immunity, however, is a question of law for the district court; thus, on appeal we consider the issue *de novo. Eugene D. By and Through Olivi D. v. Karman*, 889 F.2d 701, 706 (6th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990).

■ "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Further, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) (citing *Harlow*, 457 U.S. at 819). *See also* Comment, *Qualified Immunity for Law Enforcement Officials in Section 1983 Excessive Force Cases*, 58 U.Cin.L.Rev. 243 (1989) (for an overview of the turn towards an objective standard). Hence, in determining whether an official is entitled to qualified immunity, the relevant inquiry is whether the actions of the offending officials "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038. When the official's claim of immunity turns on decisional law, this court must focus on whether, at the time of the officers' acts, the right asserted was "clearly established" by looking to the decisions of the Supreme Court or the Sixth Circuit Court of Appeals. *Poe v. Haydon*, 853 F.2d 418, 423–24 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989) (citations omitted).

Hall contended below that the officers violated his fourth amendment rights in two respects: (1) the unannounced, nighttime, forced entry into his apartment; and (2) the officers insistence that Hall remain naked during a portion of the search. This court stated in *United States v. Murrie*, 534 F.2d 695, 698 (6th Cir.1976), that "[e]ven if police officers possess a wholly lawful warrant for arrest or search, we believe the sudden, unannounced breaking open of a dwelling, particularly in the nighttime, may ... violate ... the 'unreasonable' search standard of the Fourth Amendment." Relying on *Murrie*, the trial court in the instant case held that because "the search was conducted at night, in a residence, by forcible entry, and that the plaintiff's version of the events is diametrically opposed to the defendants' version, a jury question is clearly created." Further, although the trial court recognized that exigent circumstances may justify an unannounced, nighttime, forced entry, the court determined that "[t]he existence of such circumstances is not clear and is a question of fact in this case." With respect to Hall's claim that he had a clearly established right in not being made to stand naked in the cold January air, the trial court determined that "no reasonable officer could have believed that such conduct was not violative of [Hall's] constitutional right to be free from unreasonable searches, and thus a jury issue is presented."

### III.

■ Regarding the unannounced, nighttime, forced entry into Hall's apartment, it must be determined whether an objectively "reasonable officer could have believed [the search] to be lawful, in light of the clearly established law and the information the searching officers possessed." *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040. *See also Guercio v. Brody*, 911 F.2d 1179, 1183 (6th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991) ("the question confronting this court ... is not whether Judge Feikens actually violated Guercio's first amendment right of free speech ... but, rather, is whether plaintiff's rights were so clearly established when she was terminated that Judge Feikens should have understood that his conduct ... violated her first amendment right to free speech[.]") (citing *Anderson*, 483 U.S. at 638–39, 107 S.Ct. at 3038–39).

"The Supreme Court has not ruled whether the fourth amendment requires police officers executing a search warrant to knock, announce their purpose, and be refused admittance before they break down the door of a building to enter it." *United States v. Francis*, 646 F.2d 251, 257 (6th Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981). *See also Reneer v. Wall*, 916 F.2d 713 (6th Cir.1990) (Westlaw) ("that statement [made in *Francis* ] remains true today"); 2 W. LaFave, Search and Seizures § 4.8(a) at 271 (2d ed.1987) (hereinafter *LaFave* ). In the Sixth Circuit, however, it is "clearly established" law that "the fourth amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances." *Francis*, 646 F.2d at 258. Hence, for purposes of appellants' claim to qualified immunity, the question becomes whether an objectively reasonable officer, confronted with similar circumstances, could have reasonably believed that exigent circumstances existed.

This court stated in *United States v. Hayes*, 518 F.2d 675 (6th Cir.1975), that [a]n inquiry to determine whether an exigent circumstance exists necessitates a balancing of the individual's right to be free from unreasonable intrusions against society's right to investigate crime quickly and adequately.

*Id.* at 677 (citing *Johnson v. United States*, 333 U.S. 10, 14–15, 68 S.Ct. 367, 369–70, 92 L.Ed. 436 (1948)). The risk that drugs would be destroyed was the only exigent circumstance on which the appellants could rely in order to justify the unannounced, nighttime, forced entry in this case.

There are two major schools of thought with respect to whether the possible destruction of drugs constitutes an exigent circumstance in search warrant cases. One approach suggests that unannounced, forced entries to execute a search warrant are always reasonable in narcotics cases on the ground that narcotics violators are normally on the alert to destroy any contraband at the first notice of an officer's presence. *See United States v. Tracy*, 835 F.2d 1267 (8th Cir.), *cert. denied*, 486 U.S. 1014, 108 S.Ct. 1750, 100 L.Ed.2d 212 (1988). The second approach requires some other reason in addition to the fact that narcotics could be disposed of quickly. *See United States v. Allen*, 675 F.2d 1373, 1382 (9th Cir.1980), *cert. denied*, 454 U.S. 833, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981) (possibility of destruction of drugs plus other significant facts); *cf. Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (upheld search when officers suspected drugs could easily be destroyed and that Ker may have been expecting police as they had chased him earlier in the day).

The Supreme Court has not yet decided whether the possible destruction of drugs, in and of itself, constitutes exigent circumstances in search warrant cases. Sixth Circuit authority on this issue is also scant. In a recent unpublished opinion where the officers had obtained a search warrant, the court noted three factors supporting exigent circumstances: (1) defendant was believed to possess drugs; (2) defendant had a history of destroying evidence; and (3) the defendant was known to be armed. *Reneer v. Wall*, 916 F.2d 713 (6th Cir.1990) (Westlaw). The court found exigent circumstances in the unannounced, forced entry "[b]ecause an announced entry would

have been potentially dangerous *and* would have involved a substantial risk that evidence could be destroyed[.]" *Id.* (emphasis added). Also, in *United States v. Messam,* 803 F.2d 722 (6th Cir.1986) (per curiam) (Westlaw), another case where the officers had obtained a search warrant, this court found exigent circumstances where occupant entered home with marijuana, was startled to find agents approaching, and quickly and repeatedly slammed the door in an attempt to secure the door. The court held that the agents could have reasonably believed that the occupant knew who they were and why they were there. *Id.* Unpublished opinions, however, are of little precedential value and thus of little, if any, import in determining whether the Sixth Circuit had "clearly established" whether the possible destruction of drugs constitutes exigent circumstances in search warrant cases.

*United States v. Francis,* 646 F.2d 251, involved two separate searches. DEA agents believed that defendant was dealing in marijuana, both at his barbershop and at his mother's home. The agents therefore obtained a search warrant for both places. After the search warrants were issued but before they were executed, the agents gained probable cause to arrest defendant. Defendant was arrested after exiting his barbershop. The agents returned to the barbershop and forced entry. Upon completing the search of the barbershop, the agents proceeded to the home of defendant's mother, forced entry, and searched the house. Incriminating evidence was discovered both at the barbershop and at the house. The district court invalidated the search of the home because of "the agents' unjustified forcible entry." *Francis,* 646 F.2d at 255. With respect to the search of the barbershop, the district court concluded "that the circumstances confronting the agents in their effort to execute the search warrant justified noncompliance with the knock and announce requirement under ... the fourth amendment." *Id.*

The district court's ruling concerning the search of the house was not challenged on appeal. In reviewing the unannounced, forced entry into defendant's barbershop, the court stated that the fourth amendment rules forbidding unannounced entry into a private dwelling "will have less force when applied to businesses[,]" such as barbershops. *Id.* at 258. The court recognized certain exceptions to the prohibition of unannounced, forced entries to dwellings where: "(1) the persons within already know of the officers' authority and purpose; (2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or (3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or the destruction of evidence." *Id.* The court concluded that the search was valid under exceptions one and two.

In *Hayes,* police officials arrested the defendants while traveling in an automobile on the highway, returned to the motel where the defendants had been staying and searched the rooms without warrants. The court held that the warrantless search was not justified on the basis of exigent circumstances. *Hayes,* 518 F.2d at 678. The court stated that "[p]ossibility is simply not enough .... It is incumbent upon the government to present proof which indicates that the evidence sought was in danger of destruction or removal." *Id.* The court stated that because the police officials knew that they had arrested all involved they could " 'have easily prevented any such destruction or removal by merely guarding the door.' " *Id.* (quoting *United States v. Jeffers,* 342 U.S. 48, 52, 72 S.Ct. 93, 95–96, 96 L.Ed. 59 (1951)).

In *United States v. Griffin,* 502 F.2d 959 (6th Cir.), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974), the police officials forced entry into an unoccupied apartment without a search warrant in search of narcotics. In finding no exigent circumstances, this court held that the government did not "present proofs which established its theory that the evidence it sought was in danger of destruction." *Id.* at 961. The court considered it extremely significant that "there was no proof that anyone was in the apartment, ... [in fact,] they had good reason to believe from prior surveillance of it that nobody was." *Id.* at

960. We note, however, that *Hayes* and *Griffin* involve warrantless searches when the residences were unoccupied. *See also United States v. Radka*, 904 F.2d 357 (6th Cir.1990) (two requirements for finding exigent circumstances: (1) reasonable belief that someone is inside dwelling; and (2) reasonable belief that the loss or destruction of evidence was imminent); *United States v. Sangineto–Miranda*, 859 F.2d 1501 (6th Cir.1988) (finding exigent circumstances in warrantless entry when officers reasonably believed that drugs were in building, that someone was inside, and that persons may soon become aware that police are after them).

There is clearly a prohibition against unannounced, forced entries in this circuit absent exigent circumstances. In *Francis*, we outlined some possible exceptions to this prohibition. Arguably, this case may not come squarely within one of the three exceptions mentioned in *Francis*. In the case before us, the officers had a search warrant. Moreover, the officers believed that Hall was home, that he possessed drugs, and that he would immediately destroy them if police were present. The officers had more than a mere "hunch" that Hall would destroy drugs if notified of their presence. The officers were advised by one of their two confidential informants that, based on his familiarity with Hall, the informant believed Hall would not voluntarily open the door until the dope was gone. It is particularly noteworthy here that the two informants relied on by the officers had a rather remarkable track record for providing reliable information.[2]

In light of our authority and the information the searching officers possessed, an objectively reasonable officer confronted with these circumstances could have believed that an unannounced, forced entry was necessary and consistent with Hall's fourth amendment rights. The right asserted by Hall was not so clearly established in this circuit as to defeat the offi-

cers' claim of qualified immunity. The appellant officers are entitled to qualified immunity on the claim regarding the unannounced entry. Therefore, on this issue, we reverse the district court's denial of summary judgment on the grounds of qualified immunity.

## IV.

■ Hall's second claim is that the officers violated his constitutional rights by requiring him to remain naked during a portion of the search. The evidence concerning this issue is highly disputed. The court must, however, view the evidence presented and the inferences drawn therefrom in the light most favorable to appellee.

The record indicates that the main entrance to Hall's apartment is in the living room. Hall claims that after the officers forced the door open with the battering ram, the cold January air was blowing into the living room. Hall claims that although he requested that he be allowed to dress, the officers required him to remain naked in the living room during the search, approximately twenty or thirty minutes. Hall also claims that one of the officers offered him a woman's dress. Finally, in his complaint, Hall claims that the officers verbally abused him by making derogatory remarks concerning his nudity. Hall's testimony, however, does not support this allegation because he stated that the officers "didn't say a word."

In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), petitioners alleged that police officers broke into their home early in the morning without a warrant, routed them from bed, made them stand naked in the living room, ransacked every room, and took the father to the station where he was interrogated for ten hours. The Supreme

---

**2.** The two informants had provided prior information which resulted in seventeen arrests. Twelve of the arrested individuals were convicted, four cases are pending, and only one charge was dismissed. Officer Shipley had applied for eleven prior warrants based on their information, nine of which were for residences and two for vehicles. Of the nine residences, eight were found to contain contraband. Both vehicles contained contraband.

Court held that the complaint stated a Fourth Amendment cause of action against the police officers. We conclude that a reasonable officer in appellant officers' position would have known that requiring an individual to sit naked while exposed to the cold January air would violate such individual's "clearly established" rights. The district court correctly found that summary judgment is inappropriate on this issue because there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the officers did acts which violate clearly established rights. *See Poe*, 853 F.2d at 426; *Brandenburg v. Cureton*, 882 F.2d 211, 215 (6th Cir.1989). Accordingly, we affirm the district court's denial of the officers' summary judgment motion with respect to this issue.

### V.

Officer Shipley also argues that he should be granted qualified immunity on the unreasonable denial of clothes issue because he was not responsible for the actions of the uniformed officers.[3] While Shipley presents this argument as an issue of qualified immunity, it may be more appropriately characterized as a "lack of personal involvement" defense. Regardless of the characterization, however, the result is the same.

 "As a general rule, mere presence at the scene of the search, without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi v. Police Depart. of the City of Detroit*, 747 F.2d 338, 352 (6th Cir.1984). Further, a supervisory official's failure to supervise, control, or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. *Poe v. Haydon*, 853 F.2d at 429. Shipley argues that he is not directly responsible for any illegal actions taken by the other officers in executing the search warrant because he simply

searched the premises while the other officers remained with Hall. Rejecting Shipley's argument, the district court found that Shipley "not only was the prime mover in obtaining the warrant and in planning and initiating the search itself, but he participated in the search once inside the dwelling. Both in entering the apartment and in the manner of the search itself a direct causal connection exists between Officer Shipley's actions and the alleged constitutional violation as to the reasonableness of the search." Shipley's argument is not supported by the record. Shipley's involvement cannot be characterized as "mere presence" nor as "mere backup." As the record clearly supports the trial judge's conclusion on this issue, we affirm.

### VI.

 Finally, Boles, Nall, and Mansfield argue that the district erred in *sua sponte* substituting them as defendants in place of the three "John Does" named in the complaint. The district court stated two grounds for its denial of the three officers' motion for summary judgment on this issue: (1) the motion was not timely filed pursuant to the Local Rule 10.1; and (2) citing Fed.R.Civ.P. 12(h)(1), the court held that officers Boles, Nall and Mansfield had waived this defense. The above ruling by the district court is not appealable as a final judgment nor as an interlocutory ruling within the "collateral order" exception. *See Beard v. Carrollton R.R.*, 893 F.2d 117, 120 (6th Cir.1989). *See also United States v. 687.30 Acres of Land*, 451 F.2d 667, 670 (8th Cir.1971) (per curiam), *cert. denied*, 405 U.S. 1026, 92 S.Ct. 1291, 31 L.Ed.2d 486 (1972) (interlocutory rulings are generally not appealable).

### VII.

Accordingly, we AFFIRM in part, REVERSE in part, and REMAND this case to

---

**3.** Shipley's argument that he was not involved with the forced entry is moot as this court

reversed the district court on this issue.

the district court for proceedings consistent with this opinion.