NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0033n.06
Filed: January 9, 2007

No. 05-6595

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| LEO BEARDEN, | ) | WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: CLAY and ROGERS, Circuit Judges; and KATZ, District Judge.[*]

**KATZ, District Judge.** This case involves the search of a customer who was patronizing a business, which police suspected was involved in narcotics trafficking and had armed employees on the premises. That customer, the defendant herein, had a felony record and was found to have a gun in his possession. This Court **AFFIRMS** the district court's finding that said search did not violate the Fourth Amendment.

## BACKGROUND

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

1

On April 16, 2004, FBI agents and local law enforcement officers conducted a search of North Tire, a place of business owned and operated by Jodie Chambers ("Chambers"), a Shelby County Sheriff's Deputy. Chambers had consented to a search of North Tire after being investigated and arrested. Officers were looking for drugs, money, firearms, and stolen merchandise.

Prior to the search of North Tire, a confidential informant tape-recorded conversations with Chambers where Chambers threatened the informant by saying that the North Tire employees were armed. Chambers also stated that one of his employees was a convicted felon who was armed.

According to FBI Agent Kimberly R. Moore ("Agent Moore"), when officers arrived at North Tire, they "saw two individuals standing inside one of the work bays." J.A. 65. Officers told the individuals to lie down and one officer handcuffed the individuals and patted them down. Agent Moore identified Defendant Leo Bearden ("Defendant" or "Bearden") as one of those two individuals, and a Mr. Scott ("Scott") as the other individual. Agent Moore also testified that Jeffrey Chambers, brother of Jodie Chambers, and Dennis Adams ("Adams"), a North Tire employee, were at North Tire at the time of the search. J.A. 70-71. Agent Moore further stated that other officers "took care" of Jeffrey Chambers and Adams, and she did not see them until they were brought into the customer area. J.A. 84.

Agent Moore described the North Tire store as consisting of two work bays where employees could work on vehicles, a customer area enclosed in glass, and a back office behind the customer area. J.A. 66. A photograph of the store showed a sign reading: "Attention, do not enter work area. Thanks." J.A. 68. Agent Moore stated that officers found Bearden in the work bay farthest from the customer area. J.A. 70.

While searching Bearden, an officer found a gun inside Bearden's belt. Officers also found

another gun and shotgun ammunition in the back office. The officers arrested Bearden after running a criminal history check and discovering his criminal history.

North Tire employees wore blue shirts with "North Tire" embossed on the shirts. J.A. 87; 98-99. Although a photograph taken at the time of the search showed Adams, a North Tire employee, in the work bay area, Agent Moore testified that she did not see him upon entering the store during the search of Bearden. J.A. 85-86. Agent Moore testified that Bearden was wearing a "dark colored shirt with a jacket covering it" and that she could only see the collar of Bearden's shirt. J.A. 88. Agent Moore admitted that North Tire employees were not wearing jackets, but again stated that she did not see those employees upon entering the store.

Agent Moore testified that she did not ask the individuals she found within the store whether they were employees because she "didn't feel that officer's [sic] safety could dictate that we do that." J.A. 88. She also explained that officers needed to search the North Tire store quickly because they had detained Chambers at the Sheriff's Department, and they were afraid that information could get back to Chambers' brother or others at North Tire and that evidence would be destroyed or removed.

In a one-count indictment, Bearden was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). J.A. 16. Bearden moved to suppress the firearm found on his person, arguing that the officers' seizure and search of him violated the Fourth Amendment. After a suppression hearing, the district court found the following facts:

- Jodie Chambers threatened a confidential informant by telling him that all of Chambers's North Tire employees were armed. J.A. 110-11.
- When the officers arrived to search the North Tire store, Agent Moore saw two individuals, including Bearden, standing inside the work bay farthest from the customer waiting area. J.A. 111.
- Signs outside of the work bays warned that customers were not to enter the work area. J.A. 112.

- Officers did not see Adams, the North Tire employee purportedly working on Bearden's car, when they arrived. J.A. 114.
- At the time of the search, Bearden was wearing a black shirt and a black jacket, while North Tire employee were wearing blue shirts without jackets. J.A. 114.

The district court denied Bearden's motion to suppress the gun. In an oral decision, the court noted that there were two ways to analyze the Fourth Amendment issues.

First, the district court stated that under *Ybarra v. Illinois*, 444 U.S. 85 (1979), officers searching premises pursuant to the consent of the owner "have the right to frisk persons who are present to find weapons that the officer pursuing the consent to search reasonably believes or suspects, or is in the possession of the person the officer has approached or found on the premises." J.A. 125. The court required "a reason that justifies reasonable suspicion that relates to the particular individual who is searched or patted down." J.A. 125. The district court held that the officers reasonably suspected that Bearden was armed because the officers had heard the recording of Chambers stating that his North Tire employees were armed, and upon arriving at North Tire, officers saw Bearden standing in the work bay farthest from the customer area and did not have an opportunity to compare Bearden to the actual North Tire employees. In other words, the district court concluded that "given the circumstances in which these two individuals [including Bearden] were located, law enforcement officers had a reasonable belief or suspicion that they were armed, and a reasonable basis for believing them to be employees." J.A. 127. The district court also held that "a more extensive patting down" was justified in this case than would have been justified had officers conducted a typical *Terry* stop-and-frisk on the street. J.A. 126; 128.

Second, the court analyzed the issue under *Michigan v. Summers*, 452 U.S. 692 (1981). In *Summers*, the Supreme Court held "that a warrant to search for contraband founded on probable

-4-

cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705. The district court explained, and Bearden conceded, that the fact that *Summers* involved a search warrant and not consent was "not material." J.A. 128. The court concluded that *Summers* applied because the officers had an interest in minimizing the threat of harm to themselves while conducting the search of North Tire. The district court also held that handcuffing occupants of premises being searched was permitted. J.A. 129-30. Accordingly, the district court denied Bearden's motion to suppress.

After granting a motion to reopen the proof on the motion to suppress, the district court heard testimony from Adams, the North Tire employee who purportedly was working on Bearden's car when the officers executed the search. Adams testified that Bearden was not in the bay area, but was standing outside of a line on the ground which marked how close customers were allowed to be to the work bay. Adams testified that after the officers came into North Tire and told everyone to lie down, he saw Bearden lying down inside the work bay. The district court acknowledged that Adams' testimony created "some conflict" with the previous testimony, and modified the findings of fact accordingly. J.A. 170-71. The court found that Bearden was at the edge of the work bay, and at most was "not deep into it" when handcuffed. J.A. 172-73. The court then held that this modified finding did not "have any impact on [the] prior ruling on the motion." J.A. 173.

On June 9, 2005, Bearden pled guilty to violating 18 U.S.C. § 922(g), but reserved the right to appeal the Fourth Amendment issues raised in his motion to suppress. The district court sentenced Bearden to imprisonment for 180 months, and Bearden timely appealed to this Court.

**Standard of Review**

With respect to a district court's decision denying a motion to suppress, this court reviews

the district court's legal conclusions *de novo* and factual findings for clear error. *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005). Generally, a determination that police had reasonable suspicion to detain a suspect is reviewed *de novo*. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). The evidence must be viewed in the light most likely to support the decision of the district court. *United States v. Heath*, 259 F.3d 522, 528 (6th Cir. 2001); *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

## Discussion

Because the officers acted reasonably under the circumstances and reasonably mistook Bearden for a North Tire employee, the officers did not violate the Fourth Amendment when they detained and frisked Bearden. Because the discovery of the gun on Defendant's person was pursuant to a lawful search and seizure, this Court also affirms the district court's denial of Defendant's motion to suppress the gun as evidence.

## 1.    Initial Detention Was Reasonable

The officers' initial detention of Bearden was reasonable given both the law enforcement interests and "the nature of the articulable and individualized suspicion" supporting the detention. *Summers*, 452 U.S. at 703. The Fourth Amendment prohibits a police officer from even briefly detaining an individual unless the officer has a reasonable suspicion that the individual has been involved in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 20-22 (1968); *Heath*, 259 F.3d at 528. "[T]here is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.'" *Terry*, 392 U.S. at 21 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 536-37 (1967)). In *Terry*, the Supreme Court counseled that the "officer must be able to point to specific and articulable facts which, taken together with

rational inferences from those facts, reasonably warrant that intrusion." *Id.*; *see also United States v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003). The facts must be judged against an objective standard. *Terry*, 392 U.S. at 21.

Under *Michigan v. Summers*, 452 U.S. 692 (1981), a court considering whether a seizure was reasonable should assess "the character of the official intrusion and its justification," balance the law enforcement interests with the intrusion on the defendant's person, and determine whether the officers had an "articulable and individualized suspicion" to conduct the search. *U.S. v. Fountain*, 2 F.3d 656, 663 (6th Cir. 1993), *overruled on other grounds* (citing *Summers*, 452 U.S. at 701-04). In balancing the various interests, a court should weigh three interests in particular: preventing flight by the defendant, minimizing the risk of harm to the officers and others, and facilitating the orderly completion of the search. *Id.* at 662. The Sixth Circuit has also considered whether the defendant has an "apparent lawful purpose" to be on the premises. *Vite-Espinoza*, 342 F.3d at 468.

Here, officers had reasonable suspicion to detain Bearden under both *Terry* and *Summers*. Chambers gave agents consent to search the premises of his business. Chambers was also recorded telling an informant that his employees were armed. *See Adams v. Williams*, 407 U.S. 143, 146-47 (1972) (concluding that information from a reliable informant justified a *Terry* stop and frisk). Furthermore, Chambers was suspected of using his business to conduct illegal activities, including crimes related to drug trafficking. Thus, it was reasonable for officers to believe that North Tire employees posed a threat to the officers' security. Therefore, the officers had reasonable suspicion to detain North Tire employees.

The officers acted reasonably in confusing Bearden with a North Tire employee. Reasonable mistakes do not eliminate the reasonable suspicion necessary to justify a seizure under *Terry*. *See,*

*e.g.*, *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814 (6th Cir. 1999). The district court found that when the law enforcement officers approached the premises, the only two people they saw were Bearden and Scott. The court found that Bearden was not in the customer waiting area, but was standing near the work bay area. Because the officers did not see any employees of North Tire on their approach, they had no way of comparing the North Tire employee uniforms to Bearden's attire. The officers, therefore, reasonably mistook Bearden for a North Tire employee.

Finally, the officers' action was supported by the *Summers* factors of officer safety, curtailing the risk of flight, the need for orderly completion of the search, and the lawfulness of Defendant's purpose to be on the premises. The officers' safety, under the circumstances described herein, was potentially threatened by the presence of armed persons at North Tire. Detaining Bearden, given his dress, presence near the work bay, and Chambers' threat, was necessary to prevent flight and to complete the search of North Tire in an orderly manner. While Bearden may have had an apparently lawful purpose to be at North Tire, this factor is outweighed by the importance of protecting officer safety, because when the officers entered North Tire, Bearden was not readily distinguishable as a mere customer with an exclusively lawful purpose for being at the shop. The officers' search was therefore reasonable under both *Terry* and *Summers*.

**2.     Frisk Was Reasonable**

The officers' search of Bearden did not violate the Fourth Amendment because the officers had reasonable suspicion to search him. "[A] law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted." *Ybarra*, 444 U.S. at 93 (discussing *Terry v. Ohio*,

supra). However, *Ybarra* does not allow random searches for weapons; there must be a reasonable belief or suspicion directed at the person to be frisked. *Id.* at 94.

Law enforcement officers had heard Chambers state that his employees were armed. Thus, the officers were reasonably fearful that a search conducted on the premises of North Tire would lead to violence. *See United States v. Bohannon*, 225 F.3d 615, 617 (6th Cir. 2000) ("'The possible danger presented by an individual approaching and entering a structure housing a drug operation is obvious. In fact, it would have been foolhardy for an objectively reasonable officer not to conduct a security frisk under the circumstances.'") quoting *United States v. Patterson*, 885 F.2d 483, 485 (8th Cir. 1989). As discussed above, although Bearden was not a North Tire employee, the district court found that Bearden was standing near the work area. Because it was reasonable for law enforcement officers to believe that employees were armed based on the information provided by the owner of North Tire and because it was reasonable for the officers to assume Bearden was an employee, the pat down search revealing the weapon was reasonable.

Bearden relies on the Supreme Court's decision in *Ybarra* to support his argument that the search was unreasonable and thus in violation of the Fourth Amendment. However, in *Ybarra* the Court stated that the initial frisk of Ybarra "was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which . . . must form the predicate to a patdown of a person for weapons." *Ybarra*, 444 U.S. at 92-93. Here, in contrast, law enforcement officers did have a reasonable belief that Bearden was armed and dangerous because they reasonably believed he was an employee of North Tire, given his location in the store and the fact that officers did not see others in the vicinity and were thus unable to compare Bearden's clothes to the uniforms worn by North Tire employees.

Bearden also argues that the officers should have made an effort to separate employees from non-employees. However, in the context of a *Terry* stop, the Supreme Court has stated that "[t]he reasonableness of the . . . decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly hamper the police's ability to make swift, on-the-spot decisions . . . and it would require courts to 'indulge in "unrealistic second-guessing."'" *United States v. Sokolow*, 490 U.S. 1, 11 (1989) (citations omitted). In the present case, law enforcement officers were conducting a search of a business involved in drug trafficking where the employees were said to be armed.

We could conceivably credit Bearden's retrospective argument that he was a mere customer and an effort should have been made to determine who was an employee and who was not before the officers conducted searches. However, the facts show that there was too much confusion to impose such a prerequisite to search in this case, based on the concurrence of the following circumstances: (1) Chambers stated that his North Tire employees were armed; (2) police officers had probable cause, based on their investigation of Chambers, to believe that dangerous narcotics activity was taking place at North Tire; (3) the combination of the officers' having not seen an employee before seeing Bearden, their not having information as to how employees would be dressed vis-a-vis non-employees, and Bearden's having been dressed in a manner that was similar to how the employees dressed; and (4) Bearden's presence in or near the work bay, especially in light of the sign prohibiting customers from being in the work area. Given the totality of these circumstances, the police on the scene acted reasonably, and the retroactive imposition of a requirement to separate employees from non-employees would entail "unrealistic second-guessing" by this Court of the law enforcement officers conducting the search. *See Sokolow*, 490 U.S. at 11.

The concern for officer safety is not a Fourth Amendment carte-blanche, but the safety of officers is of very high importance, *see Summers*, 452 U.S. at 705, and in this case the officers' search of Bearden was reasonable in light of that interest.

### Conclusion

For the reasons discussed herein, we **AFFIRM** the judgment of the district court because the district court properly held that the search at issue did not violate the Fourth Amendment and properly denied Defendant's motion to suppress the gun as evidence.