NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0415n.06
Filed: June 19, 2007

Nos. 05-6664, 05-6801

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JOE DUNCAN, LORETTA DUNCAN, CHRIS
JACKSON, DEBBIE J. DUNCAN, JOHNNY
GROOMS, JASON LYNCH,

    Plaintiffs-Appellees,

        v.

JAMES JACKSON (05-6664), RONNIE BURNETT
(05-6801),

    Defendants-Appellants,

CITY OF SOUTH PITTSBURG, TENNESSEE;
MARION COUNTY, TENNESSEE; FEDERAL
BUREAU OF INVESTIGATION,

    Defendants.

On Appeal from the United
States District Court for the
Eastern District of Tennessee
at Chattanooga

_____/

**Before:**     **GUY, BATCHELDER, and GILMAN, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**     Individual defendants James Jackson,

Police Chief for the City of South Pittsburg, Tennessee, and Ronnie Burnett, Sheriff of

Marion County, Tennessee, appeal from the denial of qualified immunity on the claims of

unlawful search and seizure brought against them by plaintiffs Loretta Duncan, Joe Duncan,

Debbie Jo Duncan, Johnny Grooms, and Chris Jackson. *See* 42 U.S.C. § 1983. These claims

were the subject of motions for summary judgment, in which Chief Jackson and Sheriff

Burnett argued that they were entitled to qualified immunity because they did not have personal involvement beyond providing backup for a sweep conducted by the Federal Bureau of Investigation (FBI) at the residence of Loretta and Joe Duncan.

The district court concluded that there were questions of fact concerning the defendants' involvement in the search and seizures that precluded a finding of qualified immunity. This appeal followed. On remand for defendants to file a motion to supplement the record with the complete deposition transcripts, the district court agreed with defendants that statements in several of the plaintiffs' affidavits had to be disregarded because they contradicted their earlier deposition testimony. Nonetheless, in an order entered during the pendency of this appeal, the district court again concluded that Chief Jackson and Sheriff Burnett were not entitled to qualified immunity. We find, after review of the record, that factual disputes concerning the defendants' participation in the search and seizures preclude summary judgment as to some but not all of the claims asserted by these plaintiffs. For this reason, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[1]

## I.

On December 26, 2002, the FBI received information that James Davis, an individual wanted in connection with bank robberies committed in Georgia, might be staying with an acquaintance named David Howard at 409 19th Street, South Pittsburg, Tennessee. FBI Special Agent Paul Healy was contacted by the FBI office in Atlanta to investigate and he,

---

[1]No appellee brief has been filed by plaintiffs in this matter.

in turn, contacted Sheriff Burnett and Chief Jackson for assistance. Davis, the robbery suspect, was considered armed and dangerous and was believed to be traveling in a white van that matched the description of a van parked in the driveway of the premises in question. Agent Healy also stated that before entering the Duncan property, he questioned a couple who had just left the premises and showed them a photograph of the suspect. The couple said they had seen an unknown white male fitting the suspect's description on the premises.

No search warrant was obtained, although there is a factual dispute as to whether the ensuing search of the premises was consensual and an assertion that there were exigent circumstances obviating the necessity for consent. The search did not turn up Davis or Howard, although several plaintiffs acknowledged that Howard had lived there at one time. Davis was eventually captured and convicted of bank robbery.

The premises belonged to plaintiffs Loretta and Joe Duncan, husband and wife, who were home at the time of the search. Among those also present on the evening of December 26 were Debbie Jo Duncan, Johnny Grooms, Chris Jackson, Jason Lynch, and James Duncan. By all accounts, Joe, his brother James, and Chris were in the garage.[2] Chief Jackson arrived in a marked patrol car and took a position out front.

Loretta Duncan, who was in the house, testified that she went into the kitchen and found an armed FBI agent standing at or in the doorway. Agent Healy's affidavit stated that an unidentified white woman gave permission for them to conduct a security sweep for the suspect. However, Loretta Duncan denied that she gave permission to search and testified

---

[2]James Duncan never joined this lawsuit, and the claims of Jason Lynch were dismissed after he repeatedly failed to appear for deposition.

that the FBI agent simply directed her to call everyone into the kitchen while others conducted the sweep. Debbie Duncan and Johnny Grooms were sent outside, and Chief Jackson called them over to his position by the police cars. According to these plaintiffs, Chief Jackson had his weapon drawn and ordered Debbie Duncan to stand with her hands on the car. Johnny Grooms and Jason Lynch were placed in handcuffs at that time by the Chief or another officer. At some point, Debbie Duncan called out to Sheriff Burnett and he allowed her to go back inside the house to retrieve a child that had been left behind.

Sheriff Burnett testified that he arrived to see a white male come out of the house to Chief Jackson's position, and two FBI agents standing at the garage door. Sheriff Burnett testified that he saw Joe Duncan in the garage and went in to talk with him. According to Sheriff Burnett, Duncan asked what the FBI was doing there, and Burnett told him that they were looking for a bank robbery suspect. Sheriff Burnett testified that Joe Duncan agreed that they could look for the suspect, although Duncan denied that any consent was given. There is also a factual discrepancy about whether Sheriff Burnett participated in a search of the garage.

Chief Jackson testified that he assisted by securing the individuals exiting the house. Once everyone had been identified and the FBI determined that Davis was not present, everyone was released and all law enforcement personnel left the premises. None of the plaintiffs were arrested, and no charges resulted from the search. Agent Healy estimated that the "time on the premises conducting the search lasted no longer than ten minutes," while other witnesses estimated that the entire encounter lasted between 15 and 30 minutes.

One year later, plaintiffs commenced this action against Chief Jackson, the City of South Pittsburg, Sheriff Burnett, Marion County, and the FBI. The claims against the FBI were dismissed without prejudice early in the proceedings, and the city and county defendants moved for summary judgment on the remaining federal and state law claims. In an order entered September 28, 2005, the district court granted summary judgment on all the claims except the federal claims for unlawful search and seizure and the state law claims for trespass against Chief Jackson and Sheriff Burnett. These appeals are limited to the denial of qualified immunity on the § 1983 claims.

## II.

In considering a claim of qualified immunity, courts must first address the threshold question of whether, taken in the light most favorable to the party asserting the injury, the alleged facts show that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to determine whether the right was clearly established in a particularized sense, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. Qualified immunity is a question of law, which we review *de novo*. *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).

Making a broad challenge, Chief Jackson and Sheriff Burnett argued for qualified immunity on the grounds that they did not have direct responsibility for the search and seizures in this case. The argument was, in effect, that it was not these defendants' conduct that allegedly violated the plaintiffs' constitutional rights. This court has held that: "As a

general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984). The court in *Ghandi* affirmed summary judgment to the officers on the basis of unrefuted evidence that they were "merely backup officers who did not actually participate in the search." *Id.* Applying this rule in another case, however, this court rejected an officer's denial of direct responsibility when he was not only "the prime mover" in obtaining the warrant and initiating the search, but entered the apartment and conducted the search. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Affirming the denial of qualified immunity in *Hall*, this court found a direct causal connection between the officer's actions and the alleged constitutional violation.

A.      Search

While the Fourth Amendment guarantees the right to be free from unreasonable searches and seizures, Fourth Amendment interests are personal in nature such that each plaintiff must demonstrate invasion of his or her own rights. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Here, while the record indicates that the property in question belonged to Loretta and Joe Duncan, no other plaintiff has demonstrated a reasonable expectation of privacy in the premises. Accordingly, only Loretta and Joe Duncan may pursue a claim for unreasonable search of the premises.

It is established that the existence of probable cause to arrest a suspect does not justify entry into the premises of a third party to search for him. *Steagald v. United States*, 451 U.S. 204, 213-14 (1981). Rather, a search of a residence without a warrant issued upon probable

cause is presumptively unreasonable, subject to a few well-delineated exceptions that include both consent and exigent circumstances. *Payton v. New York*, 445 U.S. 573, 586 n.25 (1980); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Defendants have asserted that there were exigent circumstances, but we can reach no conclusion in that regard because the issue has not been developed on appeal.

Defendants also argue that consent excused the necessity of a warrant. *Florida v. Royer*, 460 U.S. 491, 497 (1983). There is indeed evidence that the homeowners consented to a search of the premises, which would entitle defendants to qualified immunity on this claim if the matter were not in dispute. As the district court properly recognized, however, because both Loretta and Joe Duncan denied giving consent, there is a question as to a material fact on this issue. Because this court does not have jurisdiction to resolve factual issues in an appeal challenging the denial of qualified immunity, the defendants must "concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998); *see Johnson v. Jones*, 515 U.S. 304, 313 (1995).

This brings us to the question of whether there is evidence of a direct connection between the actions of either Chief Jackson or Sheriff Burnett and the search of the premises. In one case shedding light on this issue, this court found that one officer was entitled to qualified immunity while another was not. *Aquisto v. Danbert*, No. 97-1668, 1998 WL 661145 (6th Cir. Sept. 1, 1998). The claims were for forcible entry, excessive force, and damage to property during the search. Both of the officers were at the scene to assist a

county task force with the execution of a search warrant and had participated in the pre-raid meeting. Officer Danbert was assigned to cover the back of the house in case the occupants tried to flee, but did not participate in the forced entry, the seizure of the occupant, or the search of the premises. There being no dispute on this, and even though Danbert entered the house at some later point, this court held that he was entitled to qualified immunity. In contrast, we rejected fellow Officer Vesco's claim that he also played no role in the forced entry because he did not personally breach the door. There was evidence that although Vesco did not make the decision or use the battering ram, he entered the house as part of the raid with his weapon drawn. Vesco also admitted some limited participation in the search itself. Because Vesco was not present when other officers secured the plaintiff, he could not be liable for the allegedly abusive use of force, but he was not entitled to qualified immunity on the claims for forcible entry and search of the premises.

### 1.    Chief Jackson

Chief Jackson argues on appeal that the district court erred in relying on statements in the plaintiffs' affidavits to support a finding that there was a question of material fact concerning his personal involvement in the search. As he argues—and as the district court acknowledged on remand—a party cannot create a factual issue by filing an affidavit after a motion for summary judgment has been made that contradicts his or her earlier testimony. *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Although the affidavits of Loretta Duncan, Joe Duncan, and Chris Jackson stated that Chief Jackson was personally involved in the search of the house and garage, those statements were directly contradicted

by their earlier deposition testimony.

Specifically, Loretta Duncan testified that she knew Chief Jackson; that he did *not* enter her home during the search; and that, in fact, she did not see him at all that night. Likewise, Joe Duncan and Chris Jackson testified during earlier depositions that Chief Jackson was *not* one of the men who entered the garage. Chris stated that he never actually saw Chief Jackson that night, while Joe Duncan indicated that the only time he saw Chief Jackson was when Jackson was standing outside near the street light after the search was completed. Disregarding the statements in the affidavits, the evidence showed that Chief Jackson was not involved in the investigation or the decision to search the premises, and did not personally participate in the search of the premises. Plaintiffs have failed to come forward with evidence sufficient to demonstrate a direct causal connection between Chief Jackson's conduct and the allegedly unreasonable search of the premises. We find, therefore, that Chief Jackson is entitled to summary judgment on the grounds of qualified immunity with respect to all claims that the search violated the Fourth Amendment, and we reverse the district court's decision in this regard.

### 2.    Sheriff Burnett

Although Sheriff Burnett continues to argue that the search was consensual, there is a question of material fact whether one or both homeowners consented to a search for the bank robbery suspect. However, a defendant may not appeal from the denial of qualified immunity "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Jones*, 515 U.S. at 320. This leaves the argument that

Sheriff Burnett did not have direct responsibility for the search.

Relying on his own testimony, Sheriff Burnett contends that he arrived on the scene to find two FBI agents standing at the door of the garage and entered the garage looking for Joe Duncan, with whom he was acquainted. According to Burnett, he asked Joe Duncan if he would allow the FBI to search for the bank robbery suspect; conveyed Joe Duncan's consent to the FBI agents; and then stayed to converse with Duncan and the others while the FBI conducted the search. In contrast, Joe Duncan testified that Sheriff Burnett entered the garage with the FBI agents, did not ask for consent, personally participated in the search of the garage, and made sure that the occupants stayed in the garage until the search of the premises was completed. Taking the evidence in the light most favorable to the plaintiffs, as we must, there is a question of fact concerning Sheriff Burnett's involvement whether by obtaining consent or by personally participating in the search of the garage. As a result, we affirm the district court's determination that questions of fact preclude a finding of qualified immunity as to Sheriff Burnett on the claims of Loretta and Joe Duncan for unlawful search of the premises.

**B.     Seizure**

With respect to the plaintiffs' respective seizures, this court has recognized that "[l]aw enforcement officials have a limited authority to detain occupants of a premises while a proper search is being conducted." *United States v. Bohannon*, 225 F.3d 615, 616 (6th Cir. 2000) (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)); *see also United States v. Enslin*, 327 F.3d 788, 797 n.32 (9th Cir. 2003); *United States v. Bearden*, ___ F. App'x ___,

No. 05-6595, 2007 WL 79012 (6th Cir.), *cert. denied*, ___ S. Ct. ___, 2007 WL 1107163 (2007). This authority extends over not only residents, but also others on the premises at the time of the search. *United States v. Fountain*, 2 F.3d 656, 663 (6th Cir. 1993). "An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Summers*, 452 U.S. at 705, n.19).

The Court in *Mena* found that the governmental interests in not only detaining, but using handcuffs, were at a maximum in a search for weapons where a wanted gang member resided. The Court added: "Though this safety risk inherent in executing a search warrant for weapons was sufficient to justify the use of handcuffs, the need to detain multiple occupants made the use of handcuffs all the more reasonable." *Id*. at 100. Recognizing that the duration of a detention can affect the balance of interests, the Court in *Mena* held that the two- to three-hour detention in handcuffs did not outweigh the government's safety interests.

### 1.    Chief Jackson

To begin with, the parties have failed to distinguish between the plaintiffs in asserting this claim against Chief Jackson. Disregarding the inconsistent statements in the plaintiffs' affidavits, there can be no dispute that Chief Jackson played no role in the detention of Joe Duncan or Chris Jackson, who were in the garage the entire time, or Loretta Duncan, who admitted that she never even saw Chief Jackson. This leaves only Debbie Jo Duncan and Johnny Grooms, both of whom were directed out front by the FBI and detained under the authority of Chief Jackson. Chief Jackson and one or more officers secured Debbie Duncan,

directing her to stand with her hands on the car, where she stayed until Sheriff Burnett gave her permission to go back into the house. Johnny Grooms and Jason Lynch (who is not a party to this appeal) were both secured and handcuffed during the search and were released once everyone had been identified and the FBI determined that the suspect was not present.

If it is determined that the search was proper, we find that Chief Jackson's seizures of Debbie Duncan and Johnny Grooms were reasonable. Given that the search was for a fugitive bank robbery suspect believed to be armed and dangerous and that a number of individuals were present at the time of the search, the governmental interests in the safety of the officers and others, preventing flight, and facilitating the orderly completion of the search justified the detention of the occupants and handcuffing of the two white males until the identities of everyone were established and the sweep of the premises was completed. Because a question of fact remains concerning the validity of the search, however, we affirm the denial of qualified immunity to Chief Jackson with respect to the claims of Debbie Duncan and Johnny Grooms for unlawful seizure.

### 2.    Sheriff Burnett

As with Chief Jackson, there has been no effort to distinguish between the plaintiffs' claims for unlawful seizure. Because there is no dispute that Sheriff Burnett had no direct involvement in the seizures of Loretta Duncan, Debbie Duncan, or Johnny Grooms, he is entitled to qualified immunity on those claims. This leaves Joe Duncan and Chris Jackson, who were in the garage with Sheriff Burnett during the search of the premises. Again, if the search is determined to be valid, the detention of these two plaintiffs would also have been

reasonable. Neither of them was handcuffed, nor was Sheriff Burnett apparently armed. Nonetheless, the plaintiffs testified that Sheriff Burnett entered the garage with the armed FBI agents, addressed Joe Duncan, personally participated in the search, and stayed with them in the garage until the search had been completed. On the other hand, Sheriff Burnett said he arrived only after the FBI had secured the garage, simply conveyed Joe Duncan's consent to the FBI, and stayed to converse with Joe Duncan and the others until the FBI had completed the search. The factual dispute concerning Sheriff Burnett's involvement precludes a finding of qualified immunity with respect to the claims of Joe Duncan and Chris Jackson for unlawful seizure.

## III.

For the reasons stated above, we find that the defendants are entitled to qualified immunity on the plaintiffs' Fourth Amendment claims except for: (1) the claims of Loretta and Joe Duncan against Sheriff Burnett, only, for unreasonable search of the premises; (2) the claims of Debbie Duncan and Johnny Grooms against Chief Jackson, only, for unreasonable seizure; and (3) the claims of Joe Duncan and Chris Jackson against Sheriff Burnett, only, for unreasonable seizure. Accordingly, the district court's decision denying qualified immunity is **AFFIRMED in part and REVERSED in part,** and the case is **REMANDED** for further proceedings consistent with this opinion.